MRS. J. W. (LILLIE) BENSON V. BEN L. JONES,
CHIEF JUSTICE, ET AL.

No. 4831. Decided June 25, 1927.
(296 S. W., 865).

*Holland & Moore,* for relator.

*C. A. Leddy,* for respondents.

MR. PRESIDING JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

Upon proper application therefor, the Supreme Court granted relator the right to file a petition for mandamus. The nature of the petition is made manifest by a quotation therefrom, as follows:

"Relator is appellee in Cause No. 9988, styled Mayo W. Neyland, Jr., et al., v. Mrs. J. W. (Lillie) Benson, in the aforesaid Court of Civil Appeals, and she was plaintiff in the trial court, which was the District Court for the One Hundred and First Judicial District of Texas, Dallas County. Her suit was for rescission and cancellation of an instrument of assignment, whereby she had sold and transferred to the defendants in the suit all her interest in and to 231 shares of stock in the First National Bank of Montgomery, Ala-

bama. The suit was based upon an alleged fraud, alleged to have been committed in Dallas County, Texas. The defendants, who were served with citation in the suit, duly filed pleas of privilege to be sued in Hunt County, Texas, the place of their residence. Relator duly filed her controverting affidavits to the pleas of privilege, the affidavits setting up the alleged fraud committed in Dallas, Dallas County, Texas, as constituting an exception to the general venue statute and as a ground for venue of the suit in Dallas County.

"The hearing was on the venue question alone, before the court without a jury. The trial court, after hearing the pleas, affidavits and evidence, overruled the pleas of privilege, sustained the controverting affidavits, and retained the suit in Dallas County for trial on its merits. In due time the defendants perfected an appeal from the judgment of the trial court to the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas at Dallas, which court on the 28th day of January, 1927, reversed the judgment of the trial court and rendered judgment transferring the original suit to the District Court of Hunt County for trial on its merits.

"Relator duly filed her motion for rehearing in the Court of Civil Appeals, which motion was overruled on the 26th day of February, 1927. She requested certification of the questions of law, which request was refused on the 12th day of March, 1927.

"Under the law, the judgment of the Court of Civil Appeals on the question of venue is final and no appeal may be had therefrom, nor can the Supreme Court grant a writ of error in such a case. (Art. 1821, Rev. Civ. Stat., 1925. See also National Compress Company v. Hamlin, 114 Texas, 375, 269 S. W., 1024, and Hinn v. Gallagher, 114 Texas, 322, 268 S. W., 132.)

"Relator says that the opinion handed down in her case by the Honorable Court of Civil Appeals is in conflict as hereinafter shown, with the opinions handed down by the other Courts of Civil Appeals of the State, and with the Supreme Court of Texas, and that the questions of law decided in relator's case, adversely to her, are material and important to her interest and rights, and to the jurisprudence of the State.

"Relator says that the following questions of law are the very questions involved and decided in her case, as herein referred to, and, since they were decided adversely to relator's rights and interests as she conceives the case, and since the court's decision of the questions is inconsistent with law and justice, and in conflict with decisions and opinions of the Courts of Civil Appeals of Texas, and

the Supreme Court of Texas, she feels certain that she is within her rights and the spirit and letter of the law in asking this honorable court to cause the questions to be certified to it for answer:

## "QUESTION NUMBER ONE.

"In relator's case upon the plea of privilege hearing only, was it necessary as a matter of law that she prove her cause of action by showing injury and the extent of such injury?

## "QUESTION NUMBER TWO.

"In relator's case upon the plea of privilege hearing only, was there, as a matter of law, any evidence showing injury to relator and the extent of the injury?"

The opinion of the Court of Civil Appeals herein, alleged to be in such conflict with other decisions as to require certification, is reported in 292 S. W., 251. In discussing the essential fact which Mrs. Benson was required, in any event, to establish in order to sue the Neylands outside the county of their residence, that court said:

"To sustain her controverting plea, it was incumbent upon appellee to prove that the statement that her interest in the stock was not worth in excess of $1,500 was false. This she attempted to do when she offered the testimony of the witness Ledbetter as to the value of unincumbered stock of the same issue as that involved, to which there was a clear title, but that is not the kind of stock she sold as the result of the alleged fraud. The stock she parted with was incumbered by the life estate of another person, and attempted to be further incumbered by a provision of the will, creating the estate in remainder, which had been duly probated. The representation as to the value of the stock must be limited to the value of same at the time of the commission of the alleged fraud, therefore it was incumbent upon appellee to show that the statement that her interest in the stock at that time was not worth in excess of $1,500 was false. The record is barren of any evidence establishing that the interest of appellee in the stock involved, at the time of the alleged fraudulent transaction, which was subject to Mrs. Mary Grace Benson's life estate, had a market value in excess of $1,500, or, incumbered as it was at the date of said transaction, was worth any particular sum of money."

Just after aforesaid quotation, the court said:

"Through this evidence it is apparent that appellee failed to discharge the burden that rested upon her under her controverting plea; viz., to show that the representations alleged to have been made by Neyland were false, and that she, at least prima facie, was injured as the result thereof. This certainly required more than showing that there was created by the alleged fraud the right to maintain a cause of action thereon without reference to the right to recover in some sum on account of injury sustained by appellee by reason of the fraud."

Had that been the only pronouncement of the Court of Civil Appeals, its holding would have most likely been in such conflict with the cases cited in the petition as to require the awarding of the mandamus as prayed for herein. But, it is clear that the Court of Civil Appeals reversed the trial court and sent the case to Hunt County because there was no proof that the Neylands, or either of them, made any false statement in Dallas County. This allegation was the very crux of the controverted plea of privilege. In *any event,* that burden of proof was upon Mrs. Benson.

As already shown, the court held there was no proof of the falsity of such material representation. Then, following the last quotation in this opinion, the court went on to say:

"Even though it should be conceded that it did not rest upon appellee to establish that, by reason of the fraud alleged, she sustained an injury and the extent thereof, in order to show the existence of a cause of action based on fraud, nevertheless the burden rested upon her to establish the falsity of the representations and statements alleged by her to constitute the fraud, in order to show that such statements and representations, in fact, did amount to fraud, for, until and unless such representations shall have been proved to be false, not even prima facie could it be said that appellee had discharged the burden resting upon her to show the existence of the exceptions claimed by her to exclusive venue of appellants in the county of their residence."

This last holding by the Court of Civil Appeals is not in conflict with any decision. It is manifestly correct. No case to the contrary is cited by counsel for relator. The judgment of the Court of Civil Appeals was justified and required by this last quoted holding.

In no event, therefore, could it be said that this mandamus should issue, unless it should also be said that a mere dictum, not essential to the decision of a case, should require certification. We do not.

think this can be said. · See McKay v. Conner, 101 Texas, 313, 107 S. W., 45; Pierce v. Willson, 114 Texas, 136 (144), 263 S. W., 581. From the former case, we quote as follows:

"It is evident from the foregoing statement, that in neither of the cases cited to show a conflict was the point involved which was decided in the case in which it is sought to compel the Court of Civil Appeals to certify the question. When one court decides a question one way, and another court makes a contrary ruling upon the same question, there is a conflict. Hence, unless the question be the same, there can be no conflict. But counsel have labored in argument strenuously to show that the principles announced in the cases cited necessarily lead to a conclusion adverse to that arrived at by the Court of Civil Appeals in the present case. But we do not think that such is the fact. Besides we are of opinion that the conflict must be upon the very question decided and not in reasoning by which the conclusion is reached."

In the Pierce case, supra, the authorities on the nature of the conflict requiring certification are collated. And, in that case, it was held that a mandamus would not be awarded to settle conflicts in matters of dicta only. If a contrary rule to the one there announced should obtain, then counsel for the Neylands, in a written brief filed in our court, speak pertinently as follows:

"If this court should establish the policy of requiring every observation made by the Court of Civil Appeals in the course of an opinion to be certified if there seemed to be a conflict with observations made by Courts of Civil Appeals in other cases, notwithstanding they do not affect the reversal of the case, then we apprehend its docket would be cluttered with a great deal of unnecessary litigation."

A decision of the questions proposed for certification would not determine the issue of venue here involved. That question is not reached. It is not the practice of the Supreme Court to occupy its time in determining questions which are immaterial to the determination of a given case. In transferring this case to Hunt County, on the fact findings aforesaid, the action of the Court of Civil Appeals was final. In doing so, it made no holding in conflict with any other court.

Had the full text of the opinion of the Court of Civil Appeals been before the Supreme Court, or set out in the petition itself, we doubt if permission for its filing would have been granted.

For the reason stated, we recommend that the mandamus be refused or denied.

The opinion of the Commission of Appeals is adopted, and mandamus refused.

*C. M. Cureton,* Chief Justice.