**FIRST NAT. BANK OF SAN ANGELO, TEX., v. HILL & COMBS et al.**

No. 9425.

Court of Civil Appeals of Texas. Austin.

Dec. 31, 1943.

Rehearing Denied Jan. 19, 1944.

Kerr & Gayer, of San Angelo, for appellant.

Brewer, Matthews, Nowlin & Macfarlane and W. F. Nowlin, all of San Antonio, and R. G. Hughes, of San Angelo, for appellees.

BLAIR, Justice.

This appeal is from an order sustaining the plea of privilege of appellees, Hill & Combs, a partnership, and E. D. Combs, a member of the partnership, individually, to be sued in Bexar County, their domicile. The controverting affidavit of appellant, First National Bank of San Angelo, sought to maintain venue in Tom Green County under Sec. 7 of Art. 1995, as amended by Acts of 1927, Vernon's Ann.Civ.St. art. 1995, subd. 7, which provides that "in all cases of fraud * * * suit may be brought in the county where the fraud was committed * , * *."

Appellant bank alleged that appellees, the general contractor to construct the Goodfellow Flying Field at San Angelo, had a subcontract with W. S. Thomson to do the paving and curbing work; that appellant contemplated lending money to Thomson to pay for labor and material, and in response to inquiries about the subcontract appellee Combs stated that it provided for monthly payments on estimates, and appellees gave appellant a letter agreeing to make it a payee with Thomson of checks issued for the payments due on monthly estimates; that appellant believed and relied upon this information and had loaned Thomson, who assigned all payments under the subcontract to secure the loan, the sum of $4,159, expecting the monthly payments, and would not have otherwise made the

loan to Thomson. That when the first monthly estimate was not paid appellant discovered that while the subcontract provided for monthly payments on estimates, it also provided that they would not be paid unless Thomson gave a performance bond, which he had failed to do; that appellees knew of these provisions under which monthly payments would not be made, but said nothing about them, and by their silence fraudulently concealed such provisions from appellant, which if it had known of, it would not have made the loans to Thomson; that it had been unable, except as to an amount stated, to collect its debt from Thomson; and that such fraudulent concealment of facts occurred in Tom Green County.

Appellant bank's cashier testified that appellee Combs told him that Thomson had the subcontract for the paving and curbing work; and further testified as follows:

"Q. With reference to that contract: did he tell anything about it? A. Well not much, except he asked me a little about Mr. Thomson; about the quality of his work— that he did, and I told him that so far as I knew Mr. Thomson had always performed his work according to contract and that he had built a lot of concrete work, or roads, or paving, here in town, and that so far as I knew his work had always been satisfactory, and I asked him the further question if Mr. Thomson—if he thought Mr. Thomson's bid was high enough so he would show a profit in the subcontract.

"Q. What did Mr. Combs say about that? A. He said Mr. Thomson ought to make some money out of that; that he rather favored him because he was a local man, and that there was one other lower bid.

"Q. Mr. Combs told you here in San Angelo at that time that they did have a lower bidder? A. Yes, sir.

"Q. At that time was there anything said about payments to Mr. Thomson? A. They were to be paid on monthly estimates."

On June 9, 1941, appellees wrote appellant a letter, which, omitting formal parts, reads: "With reference to your telephone conversation of recent date, will advise you that we will make all checks payable to W. S. Thomson and the First National Bank, on all payments made to him on his contract with us at the San Angelo Flying Field."

Thomson failed to give the performance bond and the monthly payments on estimates were not made. However, after the appellant bank learned of the bond provision and after it had loaned Thomson the $4,159, and between July 28th and September 22, 1941, appellees paid checks made to appellant bank and Thomson jointly, in the sum of $12,188.24. None of these checks was for a sufficient amount to pay the entire indebtedness to the bank, and they were released to enable Thomson to carry out his contract, and because the bank's cashier did not "think the bank would be inclined to throw a monkey wrench in it."

Appellee Combs testified that he did not tell the bank's cashier that there was one bid lower than that of Thomson; but did tell him that he thought Thomson should make some money on his contract, and that he was still of that opinion. Both the bank's cashier and appellee Combs testified that no inquiry was made as to any term or provision of the subcontract, except as to the fact that Thomson had the subcontract and that payments were to be made thereon on monthly estimates. No payments were made to Thomson, but were made as above stated and payments for materials were made by appellees directly to the materialmen.

The foregoing facts sustain the finding and conclusion of the trial court, trying the venue question without a jury, that no inquiry was made by appellant bank as to the provision of the subcontract requiring a performance bond before monthly estimates for the work would be paid, and that there was no fraudulent concealment of that fact arising from the silence or failure of appellees to disclose such fact, and that appellant did not in making the loans rely upon such silence or failure to disclose such fact. This alleged fraud in Tom Green County was a ground asserted to maintain venue in that county. No actual fraud was asserted, but venue was sought to be maintained upon alleged "legal" or "actionable" fraud arising from silence or failure to disclose the provision of the subcontract that payments would not be made on monthly estimates if Thomson failed to give a performance bond. We think that the foregoing facts merely raised a fact issue as to venue, which the trial court trying the matter without a jury determined against appellant. The foregoing

facts do not show legal or actionable fraud as a matter of law; but merely raised a fact issue thereon, which the trial court determined against appellant, and which action is binding on this an appellate court.

It is not clear whether appellant also seeks to maintain venue in Tom Green County upon the allegation that appellees fraudulently represented that there was one bid lower than that of Thomson. If so, the evidence was conflicting on that issue and the trial court determined it against appellant, which under the rule above stated is binding on this court. The trial court also held on this issue that the proof did not show the amount of the alleged lower bid, and that in consequence the evidence was insufficient to maintain venue on this ground.

In Neyland v. Benson; Tex.Civ.App., 292 S.W. 251, mandamus denied, Benson v. Jones, 117 Tex. 68, 296 S.W. 865, it is held that where a plea of privilege is filed by a defendant to be sued in his county and the plaintiff seeks to maintain venue where the suit is filed under the provisions of Sec. 7 of Art. 1995, he must allege the fraud; and that to sustain venue in the county of the suit, proof of transactions which might constitute fraud occurring in such county is insufficient. The trial court's findings that the evidence was insufficient to show venue on either ground asserted is sustained by the facts hereinabove stated.

The order appealed from is affirmed.

Affirmed.