**R. L. McMURTRY, Appellant,**

v.

**Emory ADDINGTON, Appellee.**

**No. 6909.**

Court of Civil Appeals of Texas.

Amarillo.

Jan. 18, 1960.

Fike & Hunter, Dalhart, for appellant.

Richards & Ferguson, Dalhart, for appellee.

CHÀPMAN, Justice.

This is a venue case in which appellee, Emory Addington, seeks to maintain his action in Dallam County, under Article 1995, Section 7, Vernon's Ann.Civ.St., relating to fraud. R. L. McMurtry, appellant (defendant below), filed his plea of privilege to be sued in Potter County, the county of his residence. The plea was controverted by appellee's allegation that his First Amended Petition shows and avers and it is a fact that appellant committed a fraud upon him in Dallam County. Such

pleading was incorporated by reference and made a part of his controverting plea.

Appellant urges two points as grounds for reversal. First, that the pleadings of appellee and the relief prayed for does not allege an action in fraud committed in Dallam County. Secondly, the testimony conclusively shows there was no fraud in the transaction upon which appellee's suit is based.

The basis of appellee's allegation of fraud is substantially that appellant listed 235 head of cows (together with their baby calves) with J. I. Wynn, appellant's agent in Amarillo, to be sold. by him for the benefit of appellant. Wynn then requested Tom Pugh to sell said cattle for him. Pugh contacted appellee and the cattle were shown and offered to him at $260 per head, which price included the baby calves. Appellee asked to inspect the cattle and was advised by appellant through Tom Pugh that appellant's ranch employee, Carl Daniels, who was then residing on the ranch, would show the cattle. Appellee and Tom Pugh drove to the ranch, situated in Dallam County, advised Carl Daniels that Addington was a prospective purchaser of the 235 head of cattle, that McMurtry had sent them to inspect the cattle and that he was to show the cattle to be purchased by appellee. Thereupon, Carl Daniels as the agent of appellant showed appellee the cattle, including 27 head of registered cows and their baby calves and "then and there represented to the plaintiff that the 27 head of registered cattle and their calves were a part of the cattle offered for sale by then and there showing said cattle to plaintiff, helping plaintiff count the baby calves upon said registered cattle." He then alleged the registered cows and calves were of the value in excess of the value of the other animals; that he relied on the representation of Carl Daniels that the animals he had inspected were the animals to be purchased by him; that he would not have purchased any of the animals except for the representations of Carl Daniels; that such representations were not true and

constituted fraud upon the part of appellant to induce appellee to purchase said cattle, which he would not have purchased ,but for said representations; that upon learning the 27 head of cows and their calves did not go with the cattle purchased he demanded that appellant return the $5,-000 that he had previously paid on said cattle to him. Then in an alternative plea appellee alleged mutual mistake of the parties and that he is entitled to have the contract cancelled and the $5,000 theretofore paid upon the same returned.

We find no allegations that by reason of such fraud appellee is entitled to have the contract rescinded and recover damages for fraud, nor is there any measure of damages for fraud alleged. To the contrary, he simply prayed for recovery of the $5,000, the exact amount paid under the terms of the contract. However, we are not here holding the pleadings do or do not constitute an action in tort. Because of the view we take of the case we consider it neither necessary that we write on appellant's first point nor improper for our failure to do so. Whether the allegations constitute an action on an alleged contract or pleaded a case in tort is, because of our liberal system of pleadings, a very close question. They are very skillfully pleaded with the evident purpose of attempting to bring them within the rules constituting an action to rescind a contract induced by fraud and recover a down payment under the contract, the pleader obviously knowing the meagerness of his proof thereon. We believe the appellee did not meet the burden of proof required to retain the case outside the county of appellant's residence.

"To deprive a defendant of the right of trial in the county of his domicile, the case against him must be within an exception to article 1830 (now Article 1995) of the Revised Statutes. With the venue challenged, under proper plea, by one sued without his county, * * * the burden not only to allege but to prove that the case is within one of the exceptions to the

statute rests on the plaintiff." Coalson v. Holmes, 111 Tex. 502, 240 S.W. 896, 898. That case further stated: "Plaintiff in error wholly failed, on the hearing or rehearing of the plea of privilege, to meet the burden resting on him to prove a cause of action for fraud committed in Parker county. The Court of Civil Appeals directed the entry of the order, on the plea of privilege, to which defendant in error was in law entitled in the trial court, and the Supreme Court would not be authorized to set aside the judgment of the Court of Civil Appeals, in order that another trial be had of the plea of privilege."

In the often cited case of Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91, 93, 95, the Supreme Court has said: "The right to maintain a suit in a county other than that in which the statute fixes the venue must depend upon the existence of the fact or facts which constitute an exception to the statute, and not upon the mere averment of such fact or facts. * * * The purpose of the hearing is to determine whether such fact or facts in truth exist, * * *."

"It is well settled that 'With the venue challenged, under proper plea, by one sued without his county, * * * the burden not only to allege but to prove that the case is within one of the exceptions to the statute rests on the plaintiff.'" Coalson v. Holmes, 111 Tex. 502, 510, 240 S.W. 896, 898; Hilliard v. Wilson, 76 Tex. 180, 13 S.W. 25; World Company v. Dow, 116 Tex. 146, 287 S.W. 241; Benson v. Jones, 117 Tex. 68, 296 S.W. 865; Greenville Gas & Fuel Co. v. Commercial Finance Co., 117 Tex. 124, 298 S.W. 550; Duffy v. Cole Petroleum Co., 117 Tex. 387, 5 S.W.2d 495; Johnson v. Dallas Cooperage & Woodenware Co., 120 Tex. 27, 34 S.W.2d 845; Berry v. Pierce Petroleum Corporation, 120 Tex. 452, 39 S.W.2d 824.

Our court in Kasishke v. Ekern, Tex.Civ. App., 278 S.W.2d 274, 277, has observed: "* * * that exceptions to the privilege of a citizen to be sued in the county of his domicile must be strictly construed and clearly established;" and "* * * that a citizen may not lightly be deprived of the right to be sued in the county of his domicile; * * *." Let us now look to the record to see if the facts proved constitute fraud, the exception relied on.

The statement of facts shows the following written listing:

"J. I. Wynn, a hundred and thirty five coming three year old heifers, nine hundred pounds; twenty five 3 year coming four year; seventy five 5 year, weigh eleven hundred to twelve hundred pounds; be some baby calves on cows; Delivery, October 10th, price Two hundred and sixty dollars per head. All cows have horns; belong to Bob McMurtry."

It is clear that the only possible theory upon which it could be said from this record there was any fraud proven such as to maintain venue in Dallam County was in the conduct and/or statements of the cowboy, Daniels, yet the record shows by appellee's own testimony that the cowboy neither said nor did anything to constitute fraud and appellee by his own declarations on the venue hearing in effect so admitted —"Daniels—he just showed us the cattle. He didn't know nothing about them at all; just showed us the cattle." Additionally, the record indicates the cowboy simply showed them all the cattle on the ranch, taking them to five different pastures. Albeit appellee pleaded Carl Daniels represented to him that the 27 head of registered cattle and their calves were a part of the cattle offered for sale by then and there showing said cattle and helping him count the baby calves upon the registered cattle he testified to the contrary with respect thereto. He not only testified Daniels did not count the calves on the registered cattle but said he did not tell him they went with the cattle offered for sale. The record also shows there were a few small, late calves

that had not been sold off the cattle listed for sale that went with the 235 head offered, that only the Shu-Bar cattle were offered in the transaction under consideration and that the registered cattle were not Shu-Bar cattle.

Mr. Pugh admitted he obtained his information on the cattle from Mr. Wynn, the information contained on the slip above quoted, and Mr. Addington admitted himself it was only a mistake in thinking the 27 head of registered cows were part of the cattle offered to him for sale.

"Q. As I understand you, Mr. Addington, from your testimony, when you were talking to Mr. McMurtry or Mr. Pugh or Mrs. McMurtry after you found out that the 27 head didn't go, you said, 'Well, just a mistake has been made.' Is that right? A. Yes, sir.

"Q. Just a mistake made as to what you thought you had actually bought and what he actually intended to sell you. A. Yes, sir. We thought it was an honest deal on his part—honest mistake.

"Q. You thought it was a mistake on his part? A. Sure did.

"Q. And, thought it was a mistake that you didn't actually—he didn't intend to sell you the 27 head? A. He didn't intend to beat us at all we didn't think.

"Q. And, you didn't think—and you thought you were getting the 27 head? A. Sure did.

"Q. And, just a mistake as to what he sold you and what you actually thought you were getting? A. Yes, sir."

"It cannot be legally said that 'fraud' and 'mistake' are synonymous terms. They have different technical meanings." Matador Land & Cattle Co., Limited v. State, Tex.Civ.App., 54 S.W. 256, 258; Denman v. Stuart, 142 Tex. 129, 176 S.W.2d 730; American Bank of Port Clinton v. Swartzlander, 21 Ohio Law Abst. 134; Van Wie v. Fidelity Trust Co., 254 Mich. 108, 235 N.W. 863, 864.

We believe that appellee, in arguing his first counter point by brief, has inadvertantly admitted that the testimony does not constitute fraud. He asserts: "Appellee has clearly plead and proved each of the *necessary* elements of a suit to rescind and recover the downpayment made on the contract: (emphasis added)

" '(1) The listing of the cattle with agent Wynn;

\*     \*     \*     \*     \*     \*

" '(3) That agent, Carl Daniels, showed the cattle and represented to appellee that the registered animals and calves went with the sale;' " Yet, the record is without dispute that the 27 head of registered cattle were not listed with Wynn and appellant himself admitted that Carl Daniels never represented to him that the registered animals constituted a part of the transaction.

We believe the trial court was without legal authority in holding that venue belonged in Dallam County under the record made in this case. Accordingly, the judgment of the court below is reversed and the case is ordered transferred to Potter County, the county of appellant's residence.