**REMINGTON ARMS COMPANY, INC. now known as Sporting Goods Properties, Inc. and E.I. du Pont de Nemours & Co., Appellants,**

**v.**

**Joe LUNA, Robert Farley, Edward Farrell, and Lauro Chapa, Individually and as Representatives of a Class of Similarly Situated Persons, Appellees.**

No. 04–96–00547–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 11, 1998.

Rehearing Overruled March 25, 1998.

B. Lee Ware, Timothy F. Lee, Ware, Snow, Fogel, Jackson & Greene, P.C., Houston, for Appellants.

Robert A. Chaffin, Dawn Meade, The Chaffin Law Firm, Dennis C. Reich, Shari A. Wright, Robert J. Binstock, Reich & Binstock, Houston, for Appellees.

Before HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

## OPINION

RICKHOFF, Justice.

This interlocutory appeal arises from the trial court's order certifying a class action. Because a class action is not the superior method of litigation in this case, we reverse and remand.

## Background

Joe Luna, Robert Farley, Edward Farrell, and Lauro Chapa (collectively, the plaintiffs), sued E.I. du Pont de Nemours and Company and its wholly owned subsidiary, Remington Arms Company, Inc., now known as Sporting Goods Properties, Inc. (collectively, du Pont),[1] for economic losses stemming from alleged defects in the Remington Model 700 rifle. According to the plaintiffs, Model 700 rifles manufactured before 1982 have defective fire controls and bolt locks that cause them to accidently discharge, while those rifles manufactured after 1982 have defective fire controls. The plaintiffs' causes of action include (1) breach of express and implied warranties of merchantability and fitness for a particular purpose; (2) strict liability based on misrepresentations, design defects, and marketing defects; (3) negligent design and marketing; (4) fraud; (5) fraudulent concealment; and (6) various violations of the Deceptive Trade Practices Act. They seek repair costs, estimated at $70 for the pre–1982 rifle and $50 for the post–1982 rifle, plus exemplary damages and attorney's fees.

The case began as a national class, was twice removed to federal court, and was the subject of mandamus relief before the plaintiffs moved the court to certify a state-wide class. *See Remington Arms Co. v. Canales,* 837 S.W.2d 624 (Tex.1992).[2] After reviewing the record and conducting a non-evidentiary hearing, the trial court certified a class of approximately 400,000 Texans "who presently own Model 700 rifles." The trial court's order subdivided the class into residents owning rifles manufactured before February 19, 1982, with allegedly defective fire controls and bolt locks, and residents owning rifles manufactured on or after February 19, 1982, with allegedly defective fire controls. The certification order also limited the class to two issues: (1) the "existence of a defect or defects in the fire control system of the Model 700 rifle"; and (2) the "cost to repair the defects, if any, in the fire control system of the Model 700 rifle."

1. In 1993, Remington Arms changed its name to Sporting Goods Properties, Inc. when it sold its assets, including its name, to a new corporation (New Remington). New Remington continues to produce the Model 700 rifles under the old corporate name, but that company was not added to the plaintiffs' suit until after this appeal was perfected.

2. The alleged defect has also been the subject of separate personal injury litigation. *See, e.g., Remington Arms Co. v. Caldwell,* 850 S.W.2d 167 (Tex.1993) (original proceeding); *Ahlschlager v. Remington Arms Co.,* 750 S.W.2d 832 (Tex. App.—Houston [14th Dist.] 1988, writ denied). Additionally, an unrelated defect in Remington shotguns was an issue in a federal class action. *See Garza v. Sporting Goods Properties, Inc.,* 1996 WL 56247 (W.D.Tex., Feb.6, 1996) (unpublished order approving class settlement).

## Standard and Scope of Review

The Rules of Civil Procedure permit the trial court to certify a class action if the plaintiffs establish all four prerequisites of Rule 42(a) and one of the prerequisites of Rule 42(b), which describes several mandatory classes and an optional class. TEX.R. CIV. P. 42(a–b); *Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 149–50 (Tex.App.—Austin 1995, writ dism'd w.o.j.). Under Rule 42(a), the plaintiffs must show (1) the class is so numerous joinder is impracticable (numerosity); (2) questions of law or fact are common to the class (commonality); (3) the class representatives have claims or defenses typical of the class (typicality); and (4) the class representatives fairly and adequately protect the interests of the class (adequacy). *See* TEX.R. CIV. P. 42(a). Because the trial court in this case applied the opt-out provisions of Rule 42(b)(4), the plaintiffs must also show (1) common questions of law or fact predominate over questions affecting only individual members; and (2) a class action is the superior method of resolving the controversy. *See* TEX.R. CIV. P. 42(b)(4).

 Because Rule 42's criteria involve questions of both law and fact, we review the trial court's decision with the abuse of discretion standard. *See Health & Tennis Corp. v. Jackson,* 928 S.W.2d 583, 587 (Tex. App.—San Antonio 1996, writ dism'd w.o.j.). In applying this standard, we defer to the trial court's factual determinations so long as they are properly supported by the record while reviewing its legal determinations de novo. *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 820 (Tex.App.—San Antonio 1996, no writ). Thus, the trial court abuses its discretion when it fails to properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is based on factual assertions unsupported by the record. *Microsoft Corp. v. Manning,* 914 S.W.2d 602, 607 (Tex.App.—Texarkana 1995, writ dism'd).

## Discussion

In its fourth point of error, du Pont alleges the class action is inferior and unmanageable when compared to "traditional" litigation. More particularly, du Pont asserts multiple individual issues will remain unresolved by the class action; the class action will coerce settlement; and Jim Wells County will be overburdened by the class litigation. We agree.

 Rule 42(b)(4) lists several factors relevant to assessing the superiority of a class action:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

TEX.R. CIV. P. 42(b)(4). Additionally, the trial court may consider whether traditional litigation is not economically feasible, whether class members would benefit from discovery already commenced, and whether the court has invested time and effort in familiarizing itself with the issues in dispute. *General Motors Corp. v. Bloyed,* 916 S.W.2d 949, 952 (Tex.1996); *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 655 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.). In short, the court must consider alternative procedures for disposing of the dispute and compare these to the judicial resources and potential prejudice to absent class members. *Reserve Life Ins. Co. v. Kirkland,* 917 S.W.2d 836, 845 (Tex.App.—Houston [14th Dist.] 1996, no writ) (suggesting individual adjudication, joinder, and intervention as possible alternatives).

At the certification hearing, the plaintiffs argued traditional litigation would not be cost effective, given the low cost of repairing the alleged defect. Although the trial court agreed, it also expressed concern about potential differences among the property claims, prejudice to the defendants and the absent class members, the possibility of compulsory joinder, and the unlikelihood that 400,000 small claims would arise in the county courts of Texas. When du Pont responded that additional litigation would be needed to solve individual causation issues, the trial court responded it had "lots of resources" to

handle such an eventuality. Ultimately, the trial court certified the class, implicitly finding the class action superior to traditional litigation.

■ Apparently, the parties agreed this product case was the only one of its kind in the nation. According to the plaintiffs' brief in support of certification, this absence of litigation demonstrated the claimants' inability to pursue individual claims. According to du Pont, the same absence of litigation demonstrated a lack of interest in resolving the claim, if any. No evidence was introduced before the trial court about the interest of potential class members in pursuing a class action or their ability to pursue individual claims. *See Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 375 (Tex.App.—El Paso 1993, no writ) (where 600 potential members expressed desire in the class); *see also* TEX.R. CIV. P. 42(b)(4)(A). Indeed, a careful reading of the entire record suggests a lack of interest beyond the four named plaintiffs and even some indifference among them. Additionally, there was no evidence demonstrating the "maturity" of the claim, litigation expense, judicial resources, or manageability. *Vinson v. Texas Commerce Bank–Houston, N.A.,* 880 S.W.2d 820, 826 (Tex.App.—Dallas 1994, no writ); *Castano v. American Tobacco Co.,* 84 F.3d 734, 747 (5th Cir.1996). Thus, the trial court's analysis is based on speculation and, as such, was an abuse of discretion. *Cf. DeBord v. Circle Y of Yoakum, Inc.,* 951 S.W.2d 127, 132 (Tex.App.—Corpus Christi 1997, n.w.h.); *Castano,* 84 F.3d at 747.We therefore sustain du Pont's fourth point of error.

## Conclusion

We need not address du Pont's remaining points of error challenging typicality, adequacy, predominance, and the viability of the plaintiffs' causes of action. We reverse the trial court's class certification order, and we remand the cause to the trial court for further proceedings consistent with this opinion.

Dissenting opinion by HARDBERGER, C.J.

HARDBERGER, Chief Justice, dissenting.

The majority holds that the trial court abused its discretion in certifying a class action because the class action is inferior and unmanageable when compared to "traditional" litigation. Because I believe the trial court did not abuse its discretion in concluding that the class action meets the superiority requirement of rule 42(b)(4), I respectfully dissent.

The majority accurately notes that we review the trial court's grant of the certification order by applying an abuse of discretion standard of review. *Health & Tennis Corp. of America v. Jackson,* 928 S.W.2d 583, 587 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.). In applying that standard, we may not substitute our judgment for that of the trial court. *Id.; Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 647–48 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.); *Vinson v. Texas Commerce Bank–Houston N.A.,* 880 S.W.2d 820, 823 (Tex.App.—Dallas 1994, no writ); *Dresser Industries, Inc. v. Snell,* 847 S.W.2d 367, 371–72 (Tex.App.—El Paso 1993, no writ). That a trial judge decided an issue differently than we would does not alone demonstrate an abuse of discretion. *Weatherly,* 905 S.W.2d at 648; *Dresser Industries, Inc.,* 847 S.W.2d at 371. We view the evidence in the light most favorable to the trial court's action, and we indulge in every presumption that would favor the trial court's ruling. *Health & Tennis Corp. of America,* 928 S.W.2d at 587; *Weatherly,* 905 S.W.2d at 647; *Vinson,* 880 S.W.2d at 823; *Dresser Industries, Inc.,* 847 S.W.2d at 371–72. A trial court does not abuse its discretion when it bases its decision on conflicting evidence. *Weatherly,* 905 S.W.2d at 648; *Vinson,* 880 S.W.2d at 823. Furthermore, the trial court is not limited to considering just the evidence presented but may base its certification decision on pleadings or other material in the record. *Health & Tennis Corp. of America,* 928 S.W.2d at 587, 592; *Weatherly,* 905 S.W.2d at 647; *Dresser Industries, Inc.,* 847 S.W.2d at 376. Therefore, a trial court only abuses its discretion if there is insufficient material in the record to support its certification ruling, and this material need not be evidence. *Health & Tennis Corp. of America,* 928 S.W.2d at 587, 592.

The majority's opinion concludes that the trial court abused its discretion in implicitly finding that the class action was superior to

other available methods for the adjudication of the controversy. In reaching its holding, the majority states that there is "no evidence" in the record regarding: (1) the potential interest of potential claim members in pursuing a class action or their ability to pursue individual claims; and (2) the maturity of the claim, litigation expense, judicial resources, or manageability. As previously noted, however, the trial court was permitted to consider more than just the evidence presented, and so long as the trial court's ruling is supported by sufficient material in the record, the ruling should be upheld. *Health & Tennis Corp. of America,* 928 S.W.2d at 587, 592; *Weatherly,* 905 S.W.2d at 648.

Although the class representatives did make some comments indicating a disinterest, we must view their entire statements in the light most favorable to the trial court's ruling. *Health & Tennis Corp. of America,* 928 S.W.2d at 587. In that light, I would conclude that there is sufficient material in the record to support the trial court's determination that the class representatives desire to have their common interests resolved in a class action. Furthermore, since we indulge in every presumption in favor of the trial court's ruling, I would presume that the absence of litigation demonstrates the claimants' inability to pursue individual claims rather than disinterest. This presumption is supported by the low cost of the repair and the generally high cost of litigation.

With regard to the "maturity" of the claim, the trial court's implicit finding that the claim was mature is supported by the testimony of the class representatives regarding the repeated misfirings of the gun and the existence of personal injury claims in which serious injury has resulted from such misfirings. Given the small amount of an individual claim, a presumption that litigation expenses would be prohibitive should also be indulged in favor of the trial court's ruling. Finally, the record demonstrates that the trial court considered the issues of judicial resources and manageability in view of its own knowledge of such resources. The majority concludes, however, that the trial court incorrectly resolved those issues in favor of class action. In reaching this conclusion, the majority improperly substitutes its judgment for that of the trial court. Viewing the evidence

in the light most favorable to the trial court's ruling and indulging every presumption in favor of that ruling, I would conclude that there is at least conflicting evidence or material in the record regarding judicial resources and manageability. The trial court does not abuse its discretion in resolving that conflict in favor of class certification. *Weatherly,* 905 S.W.2d at 648; *Vinson,* 880 S.W.2d at 823.

In addition to the factors focused upon by the majority, the record supports the trial court's resolution of the superiority requirement because it reflects that the class members will benefit from discovery that has been conducted and the trial court's familiarity with the dispute. *See Dresser Industries, Inc.,* 847 S.W.2d at 375. Finally, when class certification is ordered early in a proceeding before supporting facts are fully developed, the trial court is directed to favor maintenance of the class action because it can always modify the order later if circumstances require it. *Health & Tennis Corp. of America,* 928 S.W.2d at 587; *Dresser Industries, Inc.,* 847 S.W.2d at 376. For the foregoing reasons, I would not conclude that the trial court abused its discretion in following that directive based on a failure to meet the superiority requirement of rule 42(b)(4).