FORD MOTOR COMPANY, Leif Johnson Ford, Inc. and Fred Capdevielle, Petitioners,

v.

Barry SHELDON, Matthew Rueter, Margaret Dunayer, John Porter, William Dobbs, James Beasley and B.J. Sanders, individually and on behalf of all others similarly situated, Respondents.

No. 98–0539.

Supreme Court of Texas.

Argued Feb. 9, 1999.

Decided May 11, 2000.

Jessie A. Amos, John H. Coates, Craig A. Morgan, Austin, Jonathan L. Griffith, Washington, DC, for Petitioners.

Stephen E. McConnico, Ray N. Donley, Tommy Jacks, Sam Johnson, James L. Wright, Austin, Mark G. Einfalt, Houston, for Respondents.

Chief Justice PHILLIPS delivered the opinion of the Court, in which Justice HECHT, Justice ENOCH, Justice OWEN, Justice ABBOTT, Justice HANKINSON, Justice O'NEILL, and Justice GONZALES joined.

Seven owners of certain types of Ford vehicles, individually and on behalf of all others who bought similar vehicles in Texas, brought this class action against Ford Motor Co., a Ford dealer, and a Ford district manager. The suit prayed for damages for peeling paint, allegedly caused by the lack of spray primer in the paint process, on certain 1984–1993 vehicle models. The trial court certified the class under Texas Rule of Civil Procedure 42(b)(4). The court of appeals affirmed after modifying the class definition. *Ford Motor Compnay, Inc. v. Sheldon,* 965 S.W.2d 65 (Tex.App.–Austin 1998). Ford filed this interlocutory appeal in this Court under Texas Motor Vehicle Commission Code Section 6.06(g). We hold that this Court does have jurisdiction, and that the trial court's definition and the court of appeals' modified definition are both defective. Because these defects cannot be cured on appeal, we reverse the court of appeals' judgment affirming the class certification and remand for the trial court to decertify the class.

I

Barry Sheldon, Matthew Rueter, Margaret Dunayer, John Porter, William Dobbs, James Beasley, and B.J. Sanders (collectively "Purchasers") filed this consumer class action against Ford Motor Co., Leif Johnson Ford, Inc.(a Ford dealership in Austin), and Fred Capdevielle (Ford's district manager in Houston from 1984–1994) ("Ford"), alleging that Ford knowingly used a defective paint process resulting in premature paint peeling on their Ford vehicles. They contend that the cause of this defect was Ford's removal of spray primer from the paint process as a cost-saving measure in the early 1980s. Before that time, Ford applied low-build electrocoat to sheet metal and then sprayed a primer before adding the enamel topcoat. Under the new process, which was adopted for F–Series Trucks, Broncos, Bronco IIs, Rangers, and Mustangs, Ford replaced low-build electrocoat with medium- or high-build electrocoat and then applied the topcoat directly to the electrocoat. Purchasers argue that, because electrocoat is not weather-resistant, removing the primer from the paint process caused the paint on many vehicles to delaminate. When exposed to ultraviolet sunlight, the enamel

paint coat could separate from the vehicle's metal surface within 18 to 36 months. Purchasers assert that Ford learned of the alleged defect within a few years after adopting the new paint process, but continued to use it until the early 1990s, selling the affected cars to Texas consumers while consciously concealing the problem.[1]

Based on these allegations, Purchasers brought claims against Ford for violating the Texas Deceptive Trade Practices Act ("DTPA") and breaching the implied warranty of merchantability. Purchasers alleged that Ford violated section 17.46(b)(5) of the DTPA by representing that the vehicles have characteristics that they do not have, section 17.46(b)(7) by representing that the vehicles are of a particular quality when they are, in fact, of another, section 17.46(b)(23) by failing to disclose information about the vehicles that was known at the time of the transactions when such failure to disclose was intended to induce consumers into transactions that they would not have entered had the information been disclosed, and section 17.45(5) by acting unconscionably. *See* TEX. BUS. & COMM.CODE. §§ 17.45(5), 17.46(b)(5), (7), (23).

Purchasers also brought breach of contract, common-law fraud and conspiracy to defraud claims. After certification, the trial court granted Ford's motion for summary judgment with respect to Purchasers' breach of contract and common-law fraud claims. The conspiracy claim, which alleges that "Defendant Ford conspired with other dealers to hide this problem from consumers and to prevent consumers from getting their vehicles promptly and properly repaired," apparently remains pending in the trial court.

Purchasers sought certification of the following class:

All persons who purchased a new 1987–1993 Ford F–Series Truck, 1987–1993 Ford Bronco, 1987–1989 Ford Bronco II, 1987–1992 Ford Ranger or 1987–1989 Ford Mustang in Texas on or after March 8, 1988 which was painted with high build electrocoat or medium build electrocoat and no spray primer and who suffered past and/or future damage as a result of peeling or flaking paint on these vehicles caused by a defective paint process (i.e., high build electrocoat or medium build electrocoat and no spray primer) excluding persons who purchased vehicles pursuant to a fleet account or fleet identification number; and

All persons who purchased a new 1984–1988 Ford F–Series Truck, 1984–1988 Ford Bronco, 1984–1988 Ford Bronco II, 1984–1988 Ford Ranger or 1984–1988 Ford Mustang in Texas prior to March 8, 1988 which was painted with high build electrocoat or medium build electrocoat and no spray primer and who paid Ford or a Ford dealership for a paint repair to their vehicle to repair peeling or flaking paint caused by a defective paint process (i.e., high build electrocoat or medium build electrocoat and no spray primer), excluding persons who purchased vehicles pursuant to a fleet account or fleet identification number.

The trial court certified the class under Texas Rule of Civil Procedure 42(b)(4), determining that these questions were common to the class: (1) whether there was a defective paint process by reason of lack of primer, (2) whether Ford had knowledge of the defect, (3) whether Ford withheld information of the defect when it had a duty to disclose, and (4) how the

---

1. A federal class action purporting to represent consumers in 49 states, excluding Texas, was filed in the Eastern District of Louisiana against Ford alleging a similar defect theory. The district court refused to certify the class, determining that the action failed to meet the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b)(3). *See In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214 (E.D.La.1998). Purchasers' proposed definition is different than the class definition used in the federal action. *See id.* at 216.

discovery rule applied to delay the running of limitations. The court contemplated a two-phase trial in which the common liability questions would be determined first, with the court proceeding to individualized damage inquiries only if Ford were found liable.

The court of appeals modified the certification order. Although the court approved having "a phase of individual trials following the class-wide resolution of the common issues," 965 S.W.2d at 67–68, it determined that the class definitions in the certification order "violate Rule 42 by allowing the named plaintiffs to proceed in a class action before showing that a class exists." *Id.* at 73. The court modified the definitions by inserting the phrase "who allege the peeling or flaking was" before the clause "caused by a defective paint process" in both subclasses. *Id.* at 74. As modified, the class includes those purchasers of certain specified Ford vehicles who suffered past or future diminution in value damages or out of pocket expenses from peeling paint and who *allege* that the cause of the peeling is the lack of spray primer in the paint process.

Ford filed an interlocutory appeal in this Court under Texas Motor Vehicle Commission Code Section 6.06(g), requesting that we reverse the judgment of the court of appeals and decertify the class. *See* TEX. REV.CIV. STAT. art. 4413(36), § 6.06(g). Ford argues that the court of appeals erred in (1) redefining the class *sua sponte* to include those who *allege* that the lack of primer caused the peeling of their vehicles, thereby certifying a "failsafe" class; (2) determining that common issues exist when "a jury may reach different conclusions with respect to different class members"; (3) concluding that the common issues predominate over individual issues given the court of appeals' conclusion that "thousands of individual trials might be necessary on liability and damage issues," 965 S.W.2d at 72; (4) determining that the

class action is superior to alternative means of adjudication when the DTPA provides incentives for individual adjudication; and (5) affirming a trial plan providing for adjudication of liability issues before one jury and damage issues before a second group of juries when Texas prohibits multi-stage, piecemeal trials.

## II

■ Before reaching the merits of this appeal, we must first consider Purchasers' contention that this Court lacks jurisdiction. Beginning in 1985, the Legislature provided for interlocutory review of the grant or denial of class certification under Rule 42, but only to the courts of appeals. *See* TEX. CIV. PRAC. & REM.CODE. § 51.014(3). This Court had authority to review such judgments of the courts of appeals only if jurisdiction was otherwise established under Section 22.001(a)(1) or (2) of the Texas Government Code. *See* TEX. GOV'T CODE §§ 22.225(b)(5),(c); 22.001(a)(1),(2). Thus, we have dismissed most attempts to secure Supreme Court review of class certification for want of jurisdiction. *See, e.g., Coastal Corp. v. Garza,* 979 S.W.2d 318 (Tex.1998); *Glassell v. Ellis,* 956 S.W.2d 676 (Tex. App.—Texarkana 1997, pet. dism'd w.o.j.); *Health & Tennis Corp. of Am. v. Jackson,* 928 S.W.2d 583 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.); *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642 (Tex. App.—Houston[14th Dist.] 1995, writ dism'd w.o.j.); *National Gypsum Co. v. Kirbyville Ind. Sch. Dist.,* 770 S.W.2d 621 (Tex.App.—Beaumont 1989, writ dism'd w.o.j.).

Ford urges jurisdiction under Section 6.06(g) of the Texas Motor Vehicle Commission Code, recently enacted in 1997, which allows this Court to review a court of appeals' decision about the grant or denial of class certification involving a motor vehicle licensee even in the absence of a conflict or dissent. *See* TEX.REV.CIV. STAT. art. 4413(36), § 6.06(g) (Supp.1999).[2]

---

**2.** Section 6.06(g) provides:

A writ of error is allowed from the supreme

Purchasers concede that Section 6.06(g) vests this Court with jurisdiction, but they claim the statute is unconstitutional because it violates the prohibition against special laws, denies equal protection of the laws, and has an insufficient title.

■ Article III, Section 56 of the Texas Constitution prohibits the Legislature from enacting a special law "[r]egulating the practice or jurisdiction of . . . any judicial proceeding or inquiry before courts." TEX. CONST. art. III, § 56. We have defined a special law as one "limited to a particular class of persons distinguished by some characteristic other than geography." *Texas Boll Weevil Eradication Found. v. Lewellen*, 952 S.W.2d 454, 465 (Tex.1997); *Maple Run at Austin Mun. Util. Dist. v. Monaghan*, 931 S.W.2d 941, 945 (Tex. 1996); *see also* 1 BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 277 (1977). Purchasers contend that Section 6.06(g) is an unconstitutional special law because it unreasonably distinguishes "class actions involving cars and trucks from class actions involving the goods and services provided by every other business in the world."

■ The constitutional prohibition against special laws was intended to suppress the enactment of "laws for the ad-

vancement of personal rather than public interests" and "the reprehensible practice of trading and 'logrolling.'" *Miller v. El Paso County*, 136 Tex. 370, 150 S.W.2d 1000, 1001 (1941). Thus, the purposes underlying Section 56 are "'to prevent the granting of special privileges and to secure uniformity of law throughout the state as far as possible.'" *Maple Run*, 931 S.W.2d at 945 (quoting *Miller*, 150 S.W.2d at 1001). Purchasers argue that Section 6.06(g) violates these purposes because it gives car manufacturers and dealers a "special privilege" not granted to other litigants and "also eliminates the uniformity of the law on interlocutory class certification appeals."

■ Although we acknowledge that the benefits imparted by Section 6.06(g) are indeed restricted to a particular class,[3] we also recognize the Legislature's broad authority to make classifications for legislative purposes. *Maple Run*, 931 S.W.2d at 945; *Miller*, 150 S.W.2d at 1001. The limits to this authority are that "'the classification must be broad enough to include a substantial class and must be based on characteristics legitimately distinguishing such class from others with respect to the public purpose sought to be accomplished by the proposed legislation.'" *Maple*

court for an appeal from an interlocutory order described by Section 51.014(3) or 51.014(6), Civil Practice and Remedies Code, in a civil action involving a licensee. The writ of error shall be given precedence by the supreme court over other writs of error. The right to writ of error appeal is without prejudice to the right of any party to seek relief by application for leave to file petition for writ of mandamus with respect to the order.
TEX.REV.CIV. STAT. art. 4413(36), § 6.06(g). "Licensee" is defined by Section 1.03(20) of the Motor Vehicle Commission Code as "a person who holds a license or general distinguishing number issued by the Board under the terms of this Act or Chapter 503, Transportation Code." TEX.REV.CIV. STAT. art. 4413(36), § 1.03(20). A license is required in order "to engage in business as . . . a dealer, manufacturer, converter, representative, lessor, or lease facilitator [of motor vehicles] in this State or perform or offer to perform

repair services on a motor vehicle." TEX.REV. CIV. STAT. art. 4413(36), § 4.01(a).

3. We have found no other state where occupational status determines jurisdiction of cases in the state's highest court rather than the subject-matter of the controversy. The Texas Legislature, however, has also vested jurisdiction in this Court over interlocutory orders denying a summary judgment motion that is based in part "upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article 1, Section 8, of the Texas Constitution, or Chapter 73" of the Texas Civil Practice and Remedies Code. *See* TEX CIV. PRAC. & REM.CODE § 51.014(6); TEX. GOV'T CODE § 22.225(d).

*Run,* 931 S.W.2d at 945 (quoting *Miller,* 150 S.W.2d at 1001–02). But as this Court stated in *Rodriguez v. Gonzales,* 148 Tex. 537, 227 S.W.2d 791, 793 (1950): "The primary and ultimate test of whether a law is general or special is [1] whether there is a reasonable basis for the classification made by the law, and [2] whether the law operates equally on all within the class." *Accord Texas Boll Weevil,* 952 S.W.2d at 465; *Maple Run,* 931 S.W.2d at 945.

■ We conclude that there is a reasonable basis for distinguishing class actions involving motor vehicle licensees from other class actions and that Section 6.06(g) operates equally on all within the class. First, "[a] statute is not local or special . . . if it operates on a subject in which people at large are interested." *Langdeau v. Bouknight,* 162 Tex. 42, 344 S.W.2d 435, 441 (1961); *accord Smith v. Davis,* 426 S.W.2d 827, 832 (Tex.1968); *City of Irving v. Dallas/Fort Worth Int'l Airport Bd.,* 894 S.W.2d 456, 466 (Tex.App.—Fort Worth 1995, writ denied). Automobiles and related issues such as automobile safety are important subjects to the public. Automobiles are the primary means of transportation for most people; many, if not most, travel many thousands of miles each year and hence spend hundreds of hours each year in an automobile. In fact, acquiring an automobile is one of the largest and most important purchases that many consumers will make.[4] As a result, automobiles have often been the subject matter of Texas class action suits. *See, e.g., General Motors Corp. v. Brewer,* 966 S.W.2d 56 (Tex.1998); *General Motors Corp. v. Bloyed,* 916 S.W.2d 949 (Tex.1996); *Brookshire v. Longhorn Chevrolet Co.,* 788 S.W.2d 209 (Tex.App.—Fort Worth 1990, no writ). Thus, it is reasonable for the

Legislature to ensure heightened judicial scrutiny of these class actions that affect so many individuals. This justification is sufficient to sustain Section 6.06(g) against constitutional challenge. *See Inman v. Railroad Comm'n,* 478 S.W.2d 124, 127 (Tex.Civ.App.—Austin 1972, writ ref'd n.r.e.).

Second, Section 6.06(g) applies uniformly to all members of the affected class, as any party to a class action suit involving a licensee may assert a claim thereunder. Under the circumstances, Section 6.06(g) is not a special law that violates Article III, Section 56 of the Texas Constitution.

■ Purchasers also argue that Section 6.06(g) violates Article I, Sections 3 and 3a of the Texas Constitution and the Fourteenth Amendment of the United States Constitution providing for equal protection under the laws. U.S. CONST. amend. XIV; TEX. CONST. art. I, §§ 3, 3a. As we stated in *Trinity River Authority v. URS Consultants, Inc.,* 889 S.W.2d 259, 264 (Tex.1994): "Both the state and federal equal protection guarantees require a similar multi-tiered analysis. Where the classification does not impinge on a fundamental right, or distinguish between persons on a suspect basis such as race or national origin, it is valid as long as it is rationally related to a legitimate state purpose." (citations omitted). Section 6.06(g)'s classification does not impinge on a fundamental right. We have already decided that there is a rational basis for allowing parties to a class action involving a motor vehicle licensee to seek this Court's review of a class certification order. We therefore conclude that the provision does not violate the equal protection

4. The cost of transportation is one of Americans' most significant annual expenses, second only to housing and shelter costs. *See* U.S. DEP'T OF COMMERCE, STATISTICAL ABSTRACT OF THE UNITED STATES 465 (1998). American consumers spend an average of over $6,000 annually on transportation costs, over $2,000 of which is for the purchase of a vehicle. *Id.* On average, 19.87% of annual income is spent on transportation, with almost half of that (9.12%) towards the purchase of a vehicle. *See* AMBRY, CONSUMER POWER: HOW AMERICANS SPEND THEIR MONEY 212 (1991). Texans are no exception. In 1998, 16,150,654 motor vehicles were registered in the State of Texas. 2000–2001 TEXAS ALMANAC 579 (Ramos, ed.1999).

guarantees of either the federal or the state constitution.

 Finally, Purchasers claim that Section 6.06(g) violates Article III, Section 35 of the Texas Constitution, which requires that "the subject of each bill be expressed in its title in a manner that gives the legislature and the public reasonable notice of that subject." Tex. Const. art. III, § 35(b). But in 1986, the people amended this section to further provide that "[t]he legislature is solely responsible for determining compliance with the rule" and that "a law . . . may not be held void on the basis of an insufficient title." Tex. Const. art. III, § 35(b), (c). Thus, laws will no longer be struck down because of a deficiency in title, no matter how egregious. See Baggett v. State, 722 S.W.2d 700, 702 (Tex.Crim.App.1987) (determining that a court "no longer has the power to declare an act of the legislature unconstitutional due to the insufficiency of its caption").

For all these reasons, we conclude that Section 6.06(g) is not unconstitutional. We therefore exercise jurisdiction over this interlocutory appeal under that section without considering whether jurisdiction exists under Texas Government Code Section 22.001(a)(2).

### III

 The class action device originated in the equity courts of England as a means to overcome the requirement that "all persons materially interested, either legally or beneficially, in the subject matter of a suit, are to be made parties to it." Dickerson, Class Actions: The Law of 50 States § 1.02[1], at 1–6 (1999) (citation omitted); see also Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 808, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); Hansberry v. Lee, 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22 (1940). It was designed as " 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " General Tel. Co. v. Falcon, 457 U.S. 147, 155, 102 S.Ct. 2364,

72 L.Ed.2d 740 (1982) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). "In a class action, the complained-of wrong is allegedly committed against a class of individuals, and the judgment in the case binds the entire class, not merely named parties." Vinson v. Texas Commerce Bank–Houston, 880 S.W.2d 820, 823 (Tex.App.—Dallas 1994, no writ).

 Although Federal Rule 23 codified the class action procedure in 1938, it "gained its current shape in an innovative 1966 revision." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); see generally Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv L.Rev. 356 (1967). Texas Rule 42, adopted in 1941 and patterned after the federal rule, was also fully revised in 1977 to conform to the 1966 federal amendments. Thus, federal decisions and authorities interpreting current federal class action requirements are persuasive in Texas actions. See RSR Corp. v. Hayes, 673 S.W.2d 928, 931–32 (Tex.App.—Dallas 1984, writ dism'd).

Rule 42, like its federal counterpart, is intended to "eliminate or reduce the threat of repetitive litigation," "prevent inconsistent resolution of similar cases," and "provide an effective means of redress for individuals whose claims are too small to make it economically viable to pursue them in independent actions." See The American Law Institute, Report: Preliminary Study of Complex Litigation 35 (1987). When properly used, the class action device " 'saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion.' " Falcon, 457 U.S. at 155, 102 S.Ct. 2364 (quoting Yamasaki, 442 U.S. at 701, 99 S.Ct. 2545) (alterations omitted).

 Even though it is an efficient device, there is no right to litigate a claim as

a class action. "Rather, rule 42 provides only that the court may certify a class action if the plaintiff satisfies the requirements of the rule." *Weatherly*, 905 S.W.2d at 647 (emphasis in original). Rule 42(a) establishes four initial prerequisites to class certification: numerosity, commonality, typicality, and adequacy of representation. Moreover, a proposed class action must satisfy at least one of the subdivisions of Rule 42(b), which are:

(1) the prosecution of separate actions by or against individual members would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) where the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

(4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

Tex.R. Civ. P. 42(b).

In this case, Purchasers sought certification of a class under the fourth class action category.

## A

■ Although not an express requirement, "it is axiomatic that for a class action to be certified a 'class' must exist." *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir.1981); *accord DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970); *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 (Tex.2000); *Reserve Life Ins. Co. v. Kirkland*, 917 S.W.2d 836, 839 (Tex.App.-Houston [14th Dist.] 1996, no writ). A properly defined class is essential to the maintenance of a class action. *See Intratex*, 22 S.W.3d at 403. A proper class definition determines who is entitled to notice, who is entitled to relief and what relief can be awarded. *Id.* In addition, the class definition specifies who will be bound by the judgment. *Id.; see also* Federal Judicial Center, Manual for Complex Litigation 217 (3d ed.1995) (concluding that the notice requirement for (b)(4) class actions mandates greater precision for class definitions brought under (b)(4) than for those brought under other class action categories). Thus, the failure to adequately define a proposed class implicates due process rights. As a distinguished judge has observed:

[W]ithout reasonable specificity the court cannot define the class, cannot determine whether the representation is adequate, and the [defendant] does not know how to defend. And, what may be most significant, an over-broad framing of the class may be so unfair to the absent members as to approach, if not amount to, deprivation of due process.

*Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1126 (5th Cir.1969) (Godbold, J., concurring).

■ For a class to be properly defined, the class members must be clearly ascertainable by reference to objective criteria. *See Intratex*, 22 S.W.3d at 403. While a class definition need not be so specific "that every potential member can be identified at the commencement of the action," 7A Charles Alan Wright, Arthur

R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE, § 1760, at 117 (1986); *accord Intratex*, 22 S.W.3d at 404, a "class should not be defined by criteria that are subjective or that require an analysis of the merits of the case" because class membership would not be presently ascertainable. *Intratex*, 22 S.W.3d at 404.

The court of appeals determined that the proposed class certified by the trial court "allow[s] the named plaintiffs to proceed in a class action before showing that a class exists." 965 S.W.2d at 73. Because a "full trial ... of some issues [would be necessary] before class membership could be ascertained," the court modified the class definitions from those "who suffered past and/or future damage as a result of peeling or flaking paint on these vehicles caused by a defective paint process" or "who paid Ford or a Ford dealership for a paint repair to their vehicle to repair peeling or flaking paint caused by a defective paint process" to those "who suffered past and/or future damage as a result of peeling or flaking paint on these vehicles *who allege the peeling or flaking was* caused by a defective paint process" and those "who paid Ford or a Ford dealership for a paint repair to their vehicle to repair peeling or flaking paint *who allege the peeling or flaking was* caused by a defective paint process" *Id.* at 73–74.

We agree with the court of appeals that the class defined by the trial court fails to meet *Intratex*'s clearly-ascertainable requirement. Including the defect theory as an element of the class definition impermissibly requires a determination of the merits before the court can ensure the existence of a class. *See Intratex*, 22 S.W.3d at 404 ("[W]hen the class definition is framed as a legal conclusion, the trial court has no way of ascertaining whether a given person is a member of the class until a determination of ultimate liability as to that person is made."). Moreover, basing the class definition on a determination of the merits creates a fail-safe class because

if the defendants prevail at trial and Purchasers are unable to prove their theory, then there was never a class to begin with and certification was inappropriate. *Id.* Therefore, the proposed members of the unsuccessful class would not be bound by the judgment. Clearly, the trial court abused its discretion in defining the class in this manner. *Id.*

■ But Ford contends that the court of appeals' class definition is also erroneous. That definition limits the class to those persons "who allege" that the peeling was caused by the lack of spray primer.

■ The use of state of mind in a class definition "serves as a shorthand method of alerting the court and the parties that there might be difficulty in identifying class members." *Simer*, 661 F.2d at 670 n. 25. When a class is "so highly diverse and so difficult to identify that it is not adequately defined or nearly ascertainable," *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir.1980), the class definition will not be sustained. *See DeBremaecker*, 433 F.2d at 734; *see also* Charles Alan WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, 7A FEDERAL PRACTICE & PROCEDURE, § 1760, at 123–26 (1986) ("a class defined with reference to the state of mind of its members" renders the class "too amorphous" and will not be allowed to proceed).

We need not go so far as to hold that a class definition may never require the trial court to make a subjective inquiry into the claimants' thought processes. *See Developments in the Law—Class Actions*, 89 HARV. L.REV. 1318, 1478 n.128 (1976) (concluding that the use of state of mind in class definitions does not render a class unascertainable when identification is possible otherwise). But here, there are no realistic means for the trial court to determine which class members "allege that the peeling or flaking was caused by a defective paint process." The trial court would have to inquire individually into each proposed class member's state of mind to

ascertain class membership under the court of appeals' class definition. *See Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D.Pa.1995) (class definition was untenable because determining class membership would require mini-hearings); *Metcalf v. Edelman*, 64 F.R.D. 407, 409–10 (N.D.Ill.1974) (class definition cannot stand when it requires individual adjudications to determine membership). Such a monumental task at the outset defeats the benefits of the class action. *See Reyes v. San Diego County Bd. of Supervisors*, 196 Cal. App.3d 1263, 242 Cal.Rptr. 339, 345 (1987) ("[W]here the administrative cost in identification [of class members] ... is so substantial to render the likely appreciable benefits to the class de minimis in comparison, the class action should not be certified."). Therefore, the court of appeals' definition also fails to satisfy the clearly-ascertainable requirement.

**B**

Having found that neither the trial court's definition nor the court of appeals' modified definition satisfies the clearly ascertainable requirement, we must now determine whether we should attempt to redefine the class, if that can be done, or remand the case for the trial court to decertify the class. In *Intratex*, we refused to redefine a class, concluding that "the better course [was] to remand the action to the trial court for it to determine if the definitional problems can be eliminated." *See Intratex*, 22 S.W.3d at 405. Like the definition in *Intratex*, the trial court and the court of appeals' definitions do not lend themselves to appellate redefinition. Therefore, instead of attempting to determine whether the class can or should be redefined, we remand the case to the trial court to decertify the class. We express no opinion about whether, if the Purchasers proposed a different definition, the trial court could certify a class that would meet the requisites of Rule 42.

\* \* \*

Because both the trial court and the court of appeals' definitions fail to meet the clearly-ascertainable requirement, we reverse the judgment of the court below and remand to the trial court to decertify the class. Our action is without prejudice to a further attempt by Purchasers to seek certification of a class consistent with this opinion.

Justice BAKER filed a dissenting opinion.

Justice BAKER, dissenting.

Ford alleges that this Court has jurisdiction over its petition for review because: (1) section 6.06(g) of the Texas Motor Vehicle Commission Code gives this Court jurisdiction over class certification decisions involving motor vehicle licensees such as Ford; and (2) the court of appeals' decision in this case conflicts with prior decisions of this Court and other courts of appeals. I conclude that section 6.06(g) of the Motor Vehicle Commission Code is an unconstitutional special law and that the court of appeals' decision does not conflict with the prior decisions Ford cites. Accordingly, this Court should dismiss Ford's petition for review for want of jurisdiction. Because it does not do so, I respectfully dissent.

**I. SECTION 6.06(g)**

Ford alleges that this Court has jurisdiction under section 6.06(g) of the Texas Motor Vehicle Commission Code. *See* TEX. REV.CIV. STAT. art. 4413(36), § 6.06(g). Although the Purchasers concede that the section vests this Court with jurisdiction, they assert that the section is unconstitutional because it violates the prohibition against special laws. Because I agree with the Purchasers that section 6.06(g) is a special law, I would declare it void. Accordingly, it cannot confer jurisdiction.

## A. Special Law

The Texas Constitution prohibits the Legislature from enacting special or local laws when a general law can be made applicable. *See* Tex. Const. art. III, § 56. It also specifically prohibits the Legislature from enacting any local or special law "regulating the practice or jurisdiction of . . . any judicial proceeding or inquiry before courts." Tex. Const. art. III, § 56. A special law impermissibly distinguishes between groups on some basis other than geography. *See Texas Boll Weevil Erad. Found. v. Lewellen*, 952 S.W.2d 454, 465 (Tex.1997).

Section 56's prohibition of special and local laws was designed to prevent "the granting of special privileges and to secure the uniformity of law throughout the State as far as possible," and to stop the lawmakers from trading votes for "the advancement of personal rather than public interest." *Miller v. El Paso County*, 136 Tex. 370, 150 S.W.2d 1000, 1001 (1941). Despite the constitutional prohibition on special and local laws, courts have recognized that the Legislature can make classifications for legislative purposes. *See Maple Run at Austin Mun. Util. Dist. v. Monaghan*, 931 S.W.2d 941, 945. But such classification must have a reasonable basis, that is, it must be "based upon a reasonable and substantial difference in kind, situation, or circumstance bearing a proper relation to the [statute's] purpose." *Rodriguez v. Gonzales*, 148 Tex. 537, 227 S.W.2d 791, 793 (1950). In other words, the defined class must be "substantial" and have "characteristics legitimately distinguishing it from the rest of the State so as to require legislation peculiar thereto." *Miller*, 150 S.W.2d at 1002; *see also Smith v. Decker*, 158 Tex. 416, 312 S.W.2d 632, 636 (1958) (classification must have a foundation in difference of situation).

## B. Analysis

Generally, a party challenging a trial court's class certification decision is allowed interlocutory review of that decision only to the courts of appeals. *See* Tex. Civ. Prac. & Rem.Code § 51.014(3). This Court does not have jurisdiction to review the court of appeals' judgment unless there is a dissent in the court of appeals' opinion or the court of appeals' decision conflicts with a decision of this Court or another court of appeals. *See* Tex. Gov't Code §§ 22.225(b)(5),(c); 22.001(a)(1),(2). But in 1997, the Legislature enacted section 6.06(g) of the Texas Motor Vehicle Commission Code, which gives the Supreme Court jurisdiction to review interlocutory appeals of class certification decisions, regardless of dissent or conflict, when a motor vehicle licensee is a party. *See* Tex. Rev.Civ. Stat. art. 4413(36), § 6.06(g). Motor vehicle licensees include automobile dealers, manufacturers, converters, representatives, lessors, lease facilitators, and those who perform or offer to perform repair services on a motor vehicle. *See* Tex.Rev.Civ. Stat. art. 4413(36), §§ 1.03(20), 4.01(a). Thus, section 6.06(g) carves out an exception to the statutory rule for parties that are members of any of the above categories. Section 6.06(g)'s classification is broad enough to include a numerically substantial class, but because the classification has no reasonable basis, it is an unconstitutional special law.

There is nothing in section 6.06(g), its sparse legislative history, or the parties' arguments that hint at a reasonable basis for providing Supreme Court review of interlocutory class certification decisions involving motor vehicle licensees and not providing it for any other class litigant. Nor can I conceive of a reasonable basis. Any difference between class certification decisions involving motor vehicle licensees and decisions involving insurance companies, computer companies, oil companies, tax preparers, hospitals, credit card companies, investment companies, accounting firms, and any entity providing important consumer goods and services does not warrant an exclusive right to Supreme Court review. There is nothing unique about 6.06(g) cases other than the presence of a

motor vehicle licensee. That presence makes no difference in class certification decisions, and therefore, should not make a difference in the appellate review available.

Although class certification is a fact-intensive inquiry, the class certification requirements are the same regardless of the underlying subject matter or the parties' identities. *See* TEX.R. CIV. P. 42. Professor Newburg makes this point while discussing the different categories of tort class actions. *See* NEWBURG, NEWBURG ON CLASS ACTIONS § 17.06 (1992). He points out that class treatment will depend chiefly on applying the class certification requirements rather than on whether the suit is a mass accident, toxic tort, or products liability case. *See* NEWBURG, NEWBURG ON CLASS ACTIONS § 17.06 (1992). Review of class certification also depends on applying the class certification requirements, rather than the subject matter or parties involved. Nothing about a motor vehicle licencee's presence in a class affects whether the class is proper.

In *Miller*, this Court invalidated a statute analogous to the one at issue here. *See Miller*, 150 S.W.2d at 1002–03. In *Miller*, the statute provided an economic development tax only in counties meeting certain population requirements. *See Miller*, 150 S.W.2d at 1002–03. When the Legislature enacted the statute, the statute applied only to El Paso County. *See Miller*, 150 S.W.2d at 1002. The Court held that the statute's classification not only lacked a reasonable basis material to the statute's purpose, but the class of counties it created was not distinct *in any substantial manner* from any other counties in the State. *See Miller*, 150 S.W.2d at 1002.

Similarly, in *Rodriguez v. Gonzales*, this Court struck down an act that set out special procedures for collecting delinquent taxes. *See Rodriguez*, 227 S.W.2d at 794. The act only applied to parcels of land greater than 1,000 acres that were situated in counties bordering Mexico and

whose title emanated from the King of Spain. *See Rodriguez*, 227 S.W.2d at 794. This Court held that there was nothing special about these estates that warranted different treatment for tax collection purposes. *See Rodriguez*, 227 S.W.2d at 794 ("There is no substantial difference in the situation or circumstance of border counties relating to suits for delinquent taxes upon which to base the classification.").

The Court holds that section 6.06(g) is not a special law but a general law because many consumers spend a lot of money on automobiles. 22 S.W.3d 444, 451. In doing so, the Court pays only lip service to the reasonable basis test and instead cites Commerce Department statistics and the Texas Almanac to show that class certification decisions involving motor vehicle licensees affect many citizens. But this Court has made clear that "the primary and ultimate test of whether a law is general or special is whether there is a reasonable basis for the classification made by the law, and whether the law operates equally on all within the class." *Maple Run*, 931 S.W.2d at 945. "The significance of the subject matter and the number of persons affected by the legislation are merely factors, albeit important ones, in determining reasonableness." *Maple Run*, 931 S.W.2d at 947. Further, even if the significance of an automobile purchase distinguishes that purchase from other consumer transactions, the significance of that purchase has nothing to do with the decision to certify or decertify a class.

As the Court concedes, no other jurisdiction has a law like section 6.06(g) and with good reason—it is implausible, much less reasonable. Section 6.06(g) lacks any reasonable basis for its classification, including any substantial difference in kind, situation, or circumstances bearing a proper relation to the statute's purpose—despite the Court's hollow attempt to manufacture one. *See Rodriguez*, 227 S.W.2d at 793. By holding that section 6.06(g) is not a special law, the Court mocks the Constitutional prohibition of special laws and un-

dermines our special law jurisprudence. In any event, we all know what is going on here!

## II. CONFLICTS JURISDICTION

Ford also asserts that, regardless of section 6.06(g), this Court has jurisdiction over its petition for review because the court of appeals' decision conflicts with other cases on four issues: (1) whether questions of law or fact can be common in a class action when the jury might answer them differently for each class member; (2) whether common issues predominate when individualized trials are required to resolve claimant-specific liability issues, defenses, and damages; (3) whether liability and damages can be tried separately in a single cause of action; and (4) whether a proposed class must be defined so that it is administratively feasible at the outset to determine if an individual is a class member. I do not believe that this case meets the standard for conflicts jurisdiction.

### A. APPLICABLE LAW

In the absence of a dissent or conflict, an appeal of an interlocutory class certification order is final in the court of appeals. *See* TEX. GOV'T CODE § 22.225(b)(3); TEX. CIV. PRAC. & REM.CODE § 51.014(3). It is very difficult for a party to establish conflicts jurisdiction. *See Gonzalez v. Avalos,* 907 S.W.2d 443, 444 (Tex.1995). To establish conflicts jurisdiction, a party must show that "the conflict is on the very question of law actually involved and determined ... in both cases." *Christy v. Williams,* 156 Tex. 555, 298 S.W.2d 565, 567 (1957). The test is whether one case would overrule the other if the same court rendered both decisions. *See Coastal Corp. v. Garza,* 979 S.W.2d 318, 319–20 (Tex.1998). Furthermore, "cases do not conflict if a material factual difference distinguishes their holdings." *Coastal Corp.,* 979 S.W.2d at 320. But this standard does not require identical facts for two cases to conflict. *See Coastal Corp.,* 979 S.W.2d at 320. The conflict must involve the court's

conclusion, not merely the reasoning by which the court reached the conclusion. *See Coultress v. City of San Antonio,* 108 Tex. 150, 179 S.W. 515, 516 (1915).

Conflicts analysis does not require determining whether the courts of appeals' decisions were correctly decided, but only determining whether a conflict exists that meets conflicts jurisdiction requirements.

### B. ANALYSIS

Ford first asserts that this case conflicts with *RSR* and *Wente* on the issue of whether questions of law or fact can be common under Rule 42(a)(2) of the Texas Rules of Civil Procedure when a jury might answer them differently for each class member. *See RSR Corp. v. Hayes,* 673 S.W.2d 928, 932–33 (Tex.App.—Dallas 1984, writ dism'd w.o.j.); *Wente v. Georgia–Pacific Corp.,* 712 S.W.2d 253, 257 (Tex.App.—Austin 1986, no writ). Under Rule 42(a)(2), a trial court must find that there are questions of law or fact common to the class as a prerequisite to a class action. *See* TEX.R. CIV. P. 42(b)(2).

In *RSR,* the Fifth Court of Appeals decertified a class because common questions did not predominate over individual issues. *See RSR,* 673 S.W.2d at 933. Residential property owners had sued the owners of a lead smelter, claiming that airborne lead emissions caused personal injury and property damage. *See RSR,* 673 S.W.2d at 929. The owners alleged a variety of damages and several theories of liability. *See RSR,* 673 S.W.2d at 932–33. The trial court certified a class that included all property owners living within a two-mile radius from the smelter. *See RSR,* 673 S.W.2d at 929. The court of appeals reversed, holding that common issues did not predominate because some owners did not suffer any injury, the personal injuries alleged differed for each class member, and because the owners had asserted various theories of liability that could be answered differently among class members. *See RSR,* 673 S.W.2d at 932–33.

Here, the court of appeals held that four questions were common to the class: (1) whether the paint process was defective because it lacks spray primer; (2) whether Ford knew of the defect; (3) whether Ford had a duty to disclose the defect; and (4) how the discovery rule applied. The court distinguished *RSR* by noting that the *RSR* class was much broader because it included various types of injuries and included all landowners without regard to whether lead was on their land. Here, the class members allege one type of damage and the class only includes cars that had peeling paint.

I do not agree with Ford that the alleged conflict between *RSR* and the court of appeals' opinion in this case meets the standards for conflicts jurisdiction. First, Ford alleges this case conflicts on whether issues are common to the class under Rule 42(a)(2). But the actual question considered and decided in *RSR* was whether common issues predominated under Rule 42(b)(4). In short, the courts of appeals in *RSR* and in this case did not hold differently on the same question of law. *See Coastal Corp.*, 979 S.W.2d at 322. Furthermore, the *RSR* parties asserted numerous causes of action. Here, the parties assert only one. Additionally, *RSR* involved certification of personal injury claims in addition to property claims. *See RSR*, 673 S.W.2d at 932. This Court has noted that courts should distinguish personal injury mass tort actions from property damage class actions. *See Coastal Corp.*, 979 S.W.2d at 321. Finally, there was undisputed evidence in *RSR* that 70% of the class members within the defined geographic area did not have hazardous levels of lead on their land. *See RSR*, 673 S.W.2d at 931. Here, the court of appeals limited the class to people whose cars had peeling paint. For these reasons, we do not have conflicts jurisdiction in this case based on *RSR*.

Conflicts jurisdiction in this Court does not arise if the alleged conflict is between two decisions of the same court of appeals.

*See* TEX. GOV'T CODE § 22.225(c); *see also Dixon v. Southwestern Bell Tel. Co.*, 607 S.W.2d 240, 241 (Tex.1980). I therefore do not need to analyze the alleged conflict between *Wente* and this case because the same court of appeals issued both opinions.

Second, Ford asserts that the court of appeals decision conflicts with three other cases on the issue of whether common issues predominate under Rule 42(b)(4) when individualized trials are required to resolve claimant-specific liability issues, defenses, and damages. *See E & V Slack, Inc. v. Shell Oil Co.*, 969 S.W.2d 565 (Tex. App.—Austin 1998, no pet.); *Remington Arms Co. v. Luna*, 966 S.W.2d 641 (Tex. App.—San Antonio 1998, no pet.); *Life Ins. Co. v. Brister*, 722 S.W.2d 764 (Tex. App.—Fort Worth 1986, no writ).

I need not consider *Slack* to determine whether conflicts jurisdiction exists because the same court of appeals decided *Slack* and this case. *See* TEX. GOV'T CODE § 22.225(c); *see also Dixon*, 607 S.W.2d at 241.

In *Luna*, the Fourth Court of Appeals reversed a class certification because it determined that a class action was not a superior method of resolving the controversy. *See Luna*, 966 S.W.2d at 642. The court considered only the part of Rule 42(b)(4) providing that a class action must be the superior method of resolving the controversy and expressly refused to consider the issue of whether common questions predominated over individual questions. *See Luna*, 966 S.W.2d at 644; TEX.R. CIV. P. 42(b)(4). Ford alleges that this case conflicts with *Luna* on whether common questions predominate. But because the *Luna* court expressly refused to consider it, there can be no conflict on that question. *See Coultress*, 179 S.W. at 516.

In *Brister*, the Fourth Court of Appeals upheld a trial court's certification of a class of employees who alleged that they did not receive disability benefits as promised. *See Brister*, 722 S.W.2d at 767. The class members alleged breach of contract and

misrepresentation based on an employer's written statements in an Employee Benefit Plan. *See Brister,* 722 S.W.2d at 767. The court had to consider whether common issues predominated in the unique context of a misrepresentation case. *See Brister,* 722 S.W.2d at 774. The court noted that in consumer actions where the alleged misrepresentations vary with each transaction, individual issues would likely predominate and a class action would not be proper. *See Brister,* 722 S.W.2d at 774. The court held that the test for whether common questions predominate is not whether common questions outnumber the individual ones, but instead whether common issues will be the object of most of the litigants' and court's efforts. *See Brister,* 722 S.W.2d at 772. Finally, the court stated that a judgment for the class should settle the controversy except for the individual members providing proof of their claim. *See Brister,* 722 S.W.2d at 772. The court upheld the class certification, holding that common issues predominated because a single, uniform misrepresentation was alleged. *See Brister,* 722 S.W.2d at 774.

I do not find that the alleged conflicts between *Brister* and this case afford this Court conflicts jurisdiction. Importantly, this case involves property damage claims while *Brister* involved a cause of action with several elements that focused on individual, not group, determinations. *See Brister,* 722 S.W.2d at 774. Further, the court in *Brister* and the court of appeals in this case agree that the test of whether common issues predominate is whether common or individual issues will be the object of litigant's efforts rather than the number of common or individual issues. *See Brister,* 722 S.W.2d at 772; *Sheldon,* 965 S.W.2d at 72. Ford does not point to any conflict between *Brister* and this case that meets the standard for conflicts jurisdiction.

Third, Ford alleges that the court of appeals' opinion conflicts with prior cases holding that liability and damages cannot be tried separately when they are indivisible elements of a single cause of action. *See Otis Elevator Co. v. Bedre,* 776 S.W.2d 152 (Tex.1989) (per curiam); *Eubanks v. Winn,* 420 S.W.2d 698 (Tex.1967); *Iley v. Hughes,* 158 Tex. 362, 311 S.W.2d 648 (1958); *Greater Houston Transp. Co. v. Zrubeck,* 850 S.W.2d 579 (Tex.App.—Corpus Christi 1993, writ denied). These cases also do not meet the standard necessary to give this Court conflicts jurisdiction.

In *Otis Elevator,* this Court held in a personal injury case that a court could not remand the issue of one party's negligence while refusing to also remand the question of whether another party was contributorily negligent. *See Otis Elevator,* 776 S.W.2d at 153. Partial remand is only permissible where the issues are severable. *See Otis Elevator,* 776 S.W.2d at 153. Similarly, in *Iley,* this Court held that liability and damages issues could not be tried separately in a personal injury case. *See Iley,* 311 S.W.2d at 651. Likewise, *Eubanks* expresses Texas courts' aversion to piecemeal trials. *See Eubanks,* 420 S.W.2d at 701 (holding that a court could not grant a new trial on liability, allow the defendant to confess liability, and then award damages under the original verdict because that severed contested issues of liability and damages in a personal injury case).

This case differs from *Iley, Otis Elevator,* and *Eubanks* in several key aspects. Most importantly, this case is a property damage case but all the cases Ford cites are personal injury cases. Courts and commentators have recognized that special considerations exist when juries consider liability and damages separately in a personal injury case. *See Iley,* 311 S.W.2d at 650–51; *see also* 9 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2390, at 508 (1995). Futhermore, here the court of appeals did not find that the trial court had entirely separated liability and damages because the certification order did not mention bifur-

cating the trial. *See* 965 S.W.2d at 68 n. 2. Rather, the court of appeals assumed, and the parties agreed, that some bifurcation would be necessary in this class action. *See* 965 S.W.2d at 68 n. 2. The court of appeals decided that the individual trials would likely include aspects of liability and damages together so the bifurcation would be permissible. *See* 965 S.W.2d at 69. This decision does not deal directly with the types of bifurcation considered in *Iley, Eubanks,* and *Otis Elevator.* Because of these differences, Ford cannot demonstrate a "well-defined" and direct conflict between this case and *Iley, Eubanks,* or *Otis Elevator* to establish conflicts jurisdiction. *See Coultress,* 179 S.W. at 516–17.

The *Zrubeck* case simply does not consider the same issue as this case; therefore, no conflict exists between the two. *See Coastal Corp.,* 979 S.W.2d at 319–20. In *Zrubeck,* the trial court bifurcated the exemplary damages part of a personal injury case. *See Zrubeck,* 850 S.W.2d at 581. Eleven jurors found the defendant negligent and awarded actual damages. *See Zrubeck,* 850 S.W.2d at 584. In the second part of the trial, ten jurors, including the one who voted against liability in the first phase, found exemplary damages. *See Zrubeck,* 850 S.W.2d at 581. The court of appeals held that the defendant failed to preserve error on that issue. *See Zrubeck,* 850 S.W.2d at 581. In dicta, the court commented that because this was a "separate" trial, the same ten jurors did not have to agree on liability and damages. *See Zrubeck,* 850 S.W.2d at 581. No party raised that issue here.

Finally, Ford states that the court of appeals' decision conflicts with *Reserve Life Insurance Co. v. Kirkland* on whether a proposed class must be defined so that it is administratively feasible, at the proceeding's outset, for the trial court to determine whether a particular individual is a class member. *See Reserve Life Ins. Co. v. Kirkland,* 917 S.W.2d 836, 840 (Tex. App.—Houston [14ᵗʰ Dist.] 1996, no writ).

In *Kirkland,* the court defined class members as persons who purchased a ma-

jor medical policy in Texas from the defendant corporation. *See Kirkland,* 917 S.W.2d at 840. The corporation argued that the definition was too vague to determine whether an individual was a class member. *See Kirkland,* 917 S.W.2d at 840. The court of appeals disagreed and held that the class definition did not contain vague terms. *See Kirkland,* 917 S.W.2d at 840. Rather, class membership could be easily ascertained through company records. *See Kirkland,* 917 S.W.2d at 840. The court noted in dicta that class definitions in other cases were vague because the definitions contained terms relating to the plaintiff's state of mind. *See Kirkland,* 917 S.W.2d at 840. The *Kirkland* definition did not contain state-of-mind terms nor was that material to the court's holding. *See Kirkland,* 917 S.W.2d at 840.

Any statements in *Kirkland* about the plaintiff's state of mind were dicta, and conflicts jurisdiction does not arise from statements that were immaterial to the court's holding. *See Benson v. Jones,* 117 Tex. 68, 296 S.W. 865, 867 (1927). Thus, Ford cannot show that the differences between this case and *Kirkland* satisfy the standard for conflicts jurisdiction.

Because none of the cases Ford cites conflict with the court of appeals' decision here, I conclude that this Court does not have conflicts jurisdiction over Ford's petition for review.

### III. CONCLUSION

I would hold that section 6.06(g) is an unconstitutional special law. I would also hold that the court of appeals' opinion does not conflict with any opinions Ford cites in alleging conflicts jurisdiction. Accordingly, I would conclude that the Court is without jurisdiction to consider the merits of this petition. Because the Court concludes otherwise, I dissent.