

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00090-CV

YORKSHIRE INSURANCE CO., LTD.,
AND OCEAN MARINE INSURANCE CO., LTD., APPELLANTS

V.

ROY SEGER, INDIVIDUALLY AND AS SUBSTITUTE ADMINISTRATOR
OF THE ESTATE OF RANDALL JAY SEGER, DECEASED,
AND DON HOSKINS, INDEPENDENT EXECUTOR OF THE ESTATE
OF SHIRLEY FAYE HOSKINS, DECEASED, APPELLEES

On Appeal from the 84th District Court
Hutchinson County, Texas
Trial Court No. 33,355, Honorable Abe Lopez, Presiding

July 19, 2013

OPINION

Before QUINN, C.J. and CAMPBELL and HANCOCK, JJ.

Appellants, Yorkshire Insurance Co., Ltd., and Ocean Marine Insurance Co., Ltd. (collectively, "Insurers"), appeal a judgment entered against them awarding appellees, Roy Seger, individually and as substitute administrator of the estate of Randall Jay Seger, and Don Hoskins, independent executor of the estate of Shirley Faye Hoskins (collectively, "the Segers"), $35,848,273.50 each as well as post-judgment interest at an

annual rate of five percent. By seven issues, Insurers appeal. We will reverse the trial court's judgment and render judgment that the Segers take nothing by their claims.

## Background

The procedural history of the lawsuit between the Segers and Insurers is extensive. Due to our resolution of the matters presented on appeal, we will constrain our discussion of the history of this litigation to those facts that are pertinent to the present appeal.

The incident giving rise to this action was the death of Randall Jay Seger. Randall did drilling work for two related companies, Diatom Drilling Co., L.P. (Diatom), and Employer's Contractor Services, Inc. (ECS). ECS was a corporation established by Diatom's general partner, Cynthia Gillman, to provide oil field workers to Diatom and other drilling contractors. On July 13, 1992, while employed by ECS but providing services to Diatom, Randall was killed when a Diatom rig he was working on collapsed. Diatom, who was insured by a Lloyd's of London-type comprehensive general liability (CGL) insurance policy at the time of the accident, notified the subscribing insurers (collectively, "the CGL insurers") of the accident. Insurers were members of this group.

In June of 1993, Randall's parents,[1] filed suit against Diatom, its partners, and ECS alleging negligence and gross negligence. The CGL insurers were not specifically notified of the suit at the time that it was filed. The suit sat virtually dormant until 1998. In 1998, Diatom demanded that the CGL insurers provide a defense to the Segers' suit.

---

[1] Roy Seger and Shirley Faye Hoskins are Randall's parents.

The CGL insurers refused to provide a defense, contending that Randall's death was not a covered occurrence and that Diatom failed to provide timely notice of suit.

After the CGL insurers refused to provide Diatom a defense, the Segers offered to settle their suit against Diatom for $500,000, the policy limits of the CGL policy. Diatom made demand on the CGL insurers to settle the claim based on this offer. The CGL insurers notified Diatom that two of the insurers had become insolvent and, therefore, the demand exceeded the available policy limits of the CGL policy. Based on this additional information, the Segers offered to settle the suit for $368,190, the policy limits available from the solvent CGL insurers. The Segers subsequently lowered their settlement offer to $250,000. The CGL insurers refused each of these settlement demands.

Prior to trial in Seger v. Diatom ("the underlying proceeding"), the Segers non-suited all of the named defendants except for Diatom, and Diatom's counsel withdrew from representation. On March 27, 2001, the underlying proceeding was held. Gillman was subpoenaed to attend and did attend as a witness. While the trial court indicated in its judgment that Gillman appeared as the *pro se* representative of Diatom, Gillman did not identify herself as being present at the proceeding in a representative capacity. Likewise, the record reflects that Gillman's participation in the proceeding was consistent with that of a witness rather than a party. Gillman's limited "representation" of Diatom is evidenced by the fact that Diatom was not represented by counsel, did not announce ready when the proceeding was called, presented no opening or closing argument, offered no evidence, and failed to cross-examine any of the Segers' witnesses. Gillman testified and, at the conclusion of her testimony, was excused. As a

3

result of this proceeding, the trial court entered judgment against Diatom awarding Roy Seger and Shirley Faye Hoskins $7,500,000 each, plus pre- and post-judgment interest ("the underlying judgment").

Following entry of the underlying judgment, Gillman contacted Diatom's CGL insurers to inquire what they intended to do about the judgment. When Gillman received no response to her inquiry, she assigned Diatom's rights against the CGL insurers to the Segers. The assignment reserved Diatom's right to recover its attorney's fees incurred in defense of the underlying suit, but otherwise assigned all of Diatom's rights against the CGL insurers to the Segers. Following the assignment, the Segers filed a Stowers[2] action against the CGL insurers seeking damages based on the insurers' wrongful refusal to defend Diatom and negligent failure to settle the Segers' claim when demand was made within policy limits.

Prior to trial on the Stowers action, the Segers settled their assigned claims against all of the remaining solvent CGL insurers, except Yorkshire and Ocean Marine, and the settling insurers were dismissed from the suit. After resolving certain issues by pretrial summary judgment, including finding that the parties in the underlying proceeding were in a "fully adversarial relationship" and that the proceeding was a "trial," the only issues that remained to be determined at the Stowers trial were the determination of Insurers' negligence, causation, and damages. During the trial, the trial court directed the verdict as to damages based on the underlying judgment. The issues

---

[2] See generally G.A. Stowers Furniture Co. v. Am. Indem. Co., 15 S.W.2d 544, 548 (Tex. Comm'n App. 1929, holding approved).

4

of negligence and causation were submitted to a jury. The jury returned a verdict in favor of the Segers.

Insurers appealed the trial court's judgment. This Court reviewed the six issues presented by Insurers. See Yorkshire Ins. Co. v. Seger, 279 S.W.3d 755 (Tex.App.—Amarillo 2007, pet. denied) (hereinafter, "Seger I"). We affirmed the trial court's denial of Insurers' motions to recuse and disqualify counsel, and the trial court's grant of summary judgment on the issue of whether the Segers made a sufficient demand within the CGL policy limits. Id. at 775. However, in all other respects, we reversed the judgment and remanded the case for a new trial. Id.

After the case was remanded, the trial court called the case for trial on October 3, 2011. The case was submitted to a jury. Based on the jury's findings, the trial court entered a judgment that recites that the Segers' claims were covered by the CGL insurance policy, and that the underlying judgment was the result of a fully adversarial trial and, therefore, establishes the Segers' damages as a matter of law. The judgment awards Roy Seger and Don Hoskins[3] each $35,848,273.50, which, the judgment indicates, is the current amount of the underlying judgment. Insurers filed motions to disregard jury findings and for judgment n.o.v. The trial court overruled both motions. Insurers then moved for new trial, which was apparently overruled by operation of law. Insurers timely filed notice of appeal.

---

[3] Shirley Faye Hoskins died while this case was proceeding to new trial. A suggestion of death was properly filed. The trial court ordered that Don Hoskins, as independent executor of Shirley Faye Hoskins's estate, be substituted in place of Shirley Faye Hoskins, individually. The trial court further ordered that Roy Seger be substituted as administrator of Randall's estate.

By their appeal, Insurers present seven issues. Insurers contend, by their first issue, that the evidence is legally and factually insufficient to establish that Diatom was damaged by Insurers. By their second issue, Insurers contend that the assignment by which the Segers obtained their present Stowers claims is invalid as against public policy. Insurers contend, by their third issue, that there is no evidence that Insurers breached the applicable standard of care or that any negligence by Insurers proximately caused Diatom injury. By their fourth issue, Insurers contend that a policy provision excluded Randall's claims from coverage as a matter of law. Insurers' fifth issue contends that any violations of the Insurance Code they committed are immaterial and do not allow the policy to be rewritten. By their sixth issue, Insurers alternatively contend that harmful evidentiary errors require remand. Finally, by their seventh issue, Insurers contend that the trial court improperly calculated post-judgment interest. Because we will sustain Insurers' first issue, which is dispositive, we will not address Insurers' second through seventh issues. See Tex. R. App. P. 47.1.

## Evidence of Damages

By their first issue, Insurers contend that the evidence is legally and factually insufficient to establish that Diatom was damaged by Insurers and, even if damage is proven, there is insufficient evidence of the extent of said damage. This is so, according to Insurers, because the only evidence of damages offered by the Segers was the underlying judgment, but that judgment was not the result of a fully adversarial trial. See State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 714 (Tex. 1996). The Segers respond, citing Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc., 256 S.W.3d 660 (Tex. 2008), for the proposition that the Gandy requirement that the underlying

6

judgment be the result of a fully adversarial trial is inapplicable when an insurer wrongfully fails to provide a defense of the insured or wrongfully denies coverage. Id. at 671-72, 674. However, even if we determine that Gandy's fully adversarial trial requirement applies, the Segers contend that the underlying judgment in this case was the result of a fully adversarial trial.

Standard of Review

When a party challenges the legal sufficiency of the evidence supporting a verdict, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that supports it. See City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005). We must credit evidence that supports the judgment if a reasonable fact-finder could, and we must disregard contrary evidence unless a reasonable fact-finder could not. See id. at 827. Unless there is no favorable evidence to support the verdict or the contrary evidence renders supporting evidence incompetent or conclusively establishes the opposite of the verdict, we must affirm. See id. at 810-11.

The General Rule and the Gandy Exception

As we explained in Seger I,

The general rule is that, in a Stowers action, damages are fixed as a matter of law in the amount of the excess of the judgment rendered in the underlying suit in favor of the plaintiff over the applicable limits of the policy. See Allstate Ins. Co. v. Kelly, 680 S.W.2d 595, 606 (Tex.App.-Tyler 1984, writ ref'd n.r.e.). See also Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 77 S.W.3d 253, 271 (Tex. 2002) (Baker, J., dissenting); State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 713 (Tex. 1996). Thus, absent evidence that the underlying judgment is not

7

reliable evidence of the damages suffered by the insured in the underlying suit, the judgment conclusively establishes the damages suffered by the insured and is sufficient evidence to support a directed verdict.

While the general rule is that a judgment obtained by a plaintiff against an insured is conclusive to establish the amount of damages suffered by the insured in a subsequent Stowers action, see Kelly, 680 S.W.2d at 606, the Texas Supreme Court has created an exception to this general rule when the insured assigns his Stowers action to the plaintiff in the underlying suit, see Gandy, 925 S.W.2d at 714. When such an assignment occurs, the underlying judgment is not only not conclusive, but is inadmissible as evidence of damages, unless rendered as the result of a "fully adversarial trial." Id.

Seger I, 279 S.W.3d at 772.[4]


ATOFINA

The Segers contend that a case decided a year after this Court issued its opinion in Seger I made Gandy's fully adversarial trial requirement inapplicable to the case at bar. See ATOFINA, 256 S.W.3d 671-72, 674. ATOFINA Petrochemicals was a named

---

[4] During the pretrial hearing on the issue of fully adversarial trial, the Segers put great weight on this Court's statement in Seger I that a "genuine issue of material fact" was raised by the evidence regarding whether the underlying judgment was the result of a "fully adversarial trial." However, it is significant to note that our review of the "fully adversarial trial" issue in Seger I was limited to the determination of the propriety of the trial court's grant of directed verdict on damages in favor of the Segers. Consequently, we were constrained to determine whether "reasonable minds [could] draw only one conclusion from the evidence." Id. at 771-72 (quoting Collora v. Navarro, 574 S.W.2d 65, 68 (Tex. 1978)). While, as in this opinion, we identified the evidence of Diatom's lack of participation in the underlying trial, we were presented with an issue that would only allow us to reverse the trial court's directed verdict on damages. Concluding that the evidence was insufficient to establish that Diatom's participation in the underlying proceeding was such that reasonable minds must conclude that it was a fully adversarial trial, we reversed the damages portion of the underlying judgment.

Nothing in the opinion of Seger I should be construed to mean that the determination of whether a proceeding constitutes a "fully adversarial trial" is itself a fact issue. While the "fully adversarial trial" determination is a legal one, as a mixed question of law and fact, the trial court's factual determinations underlying its legal conclusion must be properly supported by the record. See Remington Arms Co. v. Luna, 966 S.W.2d 641, 643 (Tex. 1998).

8

additional insured under an umbrella insurance policy with Evanston Insurance. Id. at 663. During the term of this policy, an independent contractor drowned while working on an ATOFINA storage tank. Id. After the primary insurer tendered its $1 million policy limits, ATOFINA demanded coverage from Evanston. Id. Evanston denied the claim. Id. ATOFINA subsequently settled with the plaintiff for $6.75 million. Id. ATOFINA then sought to recover $5.75 million from Evanston. Id. Evanston argued that it should not be liable for the settlement because ATOFINA failed to prove that the settlement amount was reasonable. Id. at 670. The trial court granted summary judgment in favor of Evanston, but the Court of Appeals reversed the trial court's judgment. Id. at 663.

In analyzing the case, the Texas Supreme Court discussed the effect that the Gandy opinion has on the holding in Emp'rs Cas. Co. v. Block, 744 S.W.2d 940, 943 (Tex. 1988), where the Court held that when an insurer wrongfully denies coverage and its insured enters into an agreed judgment, the insurer is barred from challenging the reasonableness of the settlement amount. ATOFINA, 256 S.W.3d at 670-74. In concluding that Gandy was inapplicable to the settlement agreement in ATOFINA, the Court identified two key distinctions: no assignment and no Gandy concerns. As to the lack of an assignment of claims, the Court stated:

> Gandy's holding was explicit and narrow, applying only to a specific set of assignments with special attributes. By its own terms, Gandy's invalidation applies only to cases that present its five unique elements. Here, Gandy's key factual predicate is missing: ATOFINA made no assignment of its claim against Evanston; ATOFINA sued Evanston directly. That removes this case from the formal bounds of Gandy.

Id. at 673. The Court also explained that the ATOFINA settlement agreement did not implicate the concerns that Gandy was intended to address: "Gandy's reason for

invalidating assignments was simple: Those assignments made evaluating the merits of a plaintiff's claim difficult by prolonging disputes and distorting trial litigation motives."

Id. Distinguishing the ATOFINA settlement agreement, the Court explained,

> Preventing insurers from litigating the reasonableness of a settlement does not extend disputes; by definition, it shortens them. Nor is there a risk of distorting litigation or settlement motives here. ATOFINA settled without knowing whether or not it would be covered by the policy, leaving in place its motive to minimize the settlement amount in case it became solely responsible for payment.

Id. at 674. Because the ATOFINA settlement agreement was factually distinguishable from Gandy and did not implicate Gandy concerns, the Court applied Block to bar Evanston from challenging the reasonableness of the settlement agreement. Id.

Relying on ATOFINA, the Segers contend that, because Insurers did not provide Diatom a defense and denied coverage, Insurers are barred from challenging the reasonableness of the underlying judgment. However, we conclude that the arrangement between Diatom and the Segers does not meet ATOFINA's exception to Gandy. First, because the Segers are asserting their Stowers claims as assignee of Diatom, "Gandy's key factual predicate" is present. Id. at 673; see Gandy, 925 S.W.2d at 713. Second, the agreement between Diatom and the Segers implicates both of Gandy's concerns. The very point of the assignment was to prolong the litigation. Before the underlying judgment was obtained, Diatom was judgment-proof and each of the individual principals of Diatom had been nonsuited. See Transp. Ins. Co. v. Heiman, No. 05-95-00482-CV, 1999 Tex. App. LEXIS 3083, at *27-28 (Tex.App.—Dallas Apr. 26, 1999, no pet.) (it is the insured's insulation from any personal liability, such as from a covenant not to execute, that makes these sorts of arrangements "so

10

highly suspect."). Thus, the Segers obtained an assignment of Diatom's <u>Stowers</u> claims specifically for the purpose of initiating another suit against the CGL insurers. <u>See First Gen. Realty Corp. v. Md. Cas. Co.</u>, 981 S.W.2d 495, 499 (Tex.App.—Austin 1998, pet. denied). Likewise, the assignment distorted the litigation. Because neither Diatom nor its principals had any financial exposure in the underlying trial, unlike ATOFINA, Diatom had no incentive to contest its liability or to attempt to limit the assessment of damages after it was found liable. <u>See ATOFINA</u>, 256 S.W.3d at 674 (ATOFINA "settled without knowing whether or not it would be covered by the policy, leaving in place its motive to minimize the settlement amount in case it became solely responsible for payment."); <u>see also First Gen. Realty Corp.</u>, 981 S.W.2d at 500. Further, as assignee of Diatom's claims against Insurers, the Segers, in their <u>Stowers</u> action, are forced to take the position that they would not have recovered more than policy limits against Diatom if Insurers had only provided Diatom a defense. In the underlying action against Diatom, the Segers sought and obtained a judgment awarding them a combined $15,000,000 in actual damages. However, as assignee of Diatom, in the present action, the Segers are forced to argue that they would have recovered no more than the $500,000 CGL policy limits had Insurers provided Diatom a defense. In fact, the Segers argued to the trial court in their <u>Stowers</u> action that admission of the amount of damages recovered by them in the underlying proceeding would be "completely prejudicial."

## Application of Gandy

Because <u>Gandy</u>'s concerns are implicated, we must assess the validity of Diatom's assignment of its claims against Insurers, and whether the underlying judgment was the result of a fully adversarial trial.

In addressing assignments, the Texas Supreme Court held ". . . that a defendant's assignment of his claims against his insurer to a plaintiff is invalid if (1) it is made prior to an adjudication of plaintiff's claim against defendant in a fully adversarial trial, (2) defendant's insurer has tendered a defense, and (3) either (a) defendant's insurer has accepted coverage, or (b) defendant's insurer has made a good faith effort to adjudicate coverage issues prior to the adjudication of plaintiff's claim." Gandy, 925 S.W.2d at 714.

In the present case, (1) the Segers obtained their assignment of Diatom's claims against Insurers after the underlying proceeding, (2) Insurers refused to tender a defense of Diatom, and (3) Insurers neither accepted coverage nor made a good faith effort to adjudicate coverage prior to the adjudication of the Segers' claims. Thus, under Gandy, Diatom's assignment of its claims against Insurers to the Segers is valid.

While the Segers' assignment of Diatom's Stowers claims is valid under Gandy, the underlying judgment must still be the result of a fully adversarial trial. See First Gen. Realty Corp., 981 S.W.2d at 499 ("regardless of whether an assignment is valid," under Gandy, the evidentiary value of an underlying judgment depends on whether it was rendered as a result of a fully adversarial trial). "In no event, however, is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee." Gandy, 925 S.W.2d at 714; see Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821 (Tex. 1997). As the Court explained, "[t]he bottom line is that our public policy favoring fair trials outweighs our

12

public policy favoring . . . settlements." Gandy, 925 S.W.2d at 710 (quoting Elbaor v. Smith, 845 S.W.2d 240, 250 (Tex. 1992)).  As we explained in Seger I,

> . . . whether a hearing constitutes a "fully adversarial trial" requires a review of the extent to which the parties to the proceeding participated. See Gandy, 925 S.W.2d at 713.  When the judgment is an agreed judgment, default judgment, or when the underlying defendant's participation is so minimal as to evidence that the hearing was not adversarial, the judgment resulting from that hearing may not be admitted as evidence of damages in the Stowers action.  See id. at 713, 714.

Seger I, 279 S.W.3d at 772 n.25.

A review of the record from the underlying proceeding indicates that Diatom's participation was so minimal that we cannot conclude that the underlying judgment was the result of a fully adversarial trial.  The record reflects that Diatom was not represented by counsel,[5] did not announce ready at the start of trial, made no opening or closing statements, offered no evidence, and did not cross-examine any of the Segers' witnesses.  While the underlying judgment indicates that Gillman appeared as Diatom's representative, the record reflects that Gillman's participation in the proceeding was consistent with that of a witness rather than as a representative of Diatom.  In fact, at the conclusion of her testimony, Gillman was excused by the trial court.

The record reflects that the Segers offered a significant amount of evidence during the underlying proceeding, however, it is noteworthy that the only evidence of actual damages offered during this proceeding was that Randall's death cost his estate $570,278 as the value of his expected future earnings, and that funeral expenses were

_____

[5] We do not afford this factor great weight since Gillman testified that Diatom did request the CGL insurers provide a defense but that the insurers refused.

$4,881.76. There was no evidence offered that would support awards of $7,500,000 to both Roy Seger and Shirley Hoskins. However, because Diatom was not acting as an adversary, this lack of evidentiary support for the trial court's award of actual damages was not challenged during the trial, by post-judgment motion, or on appeal. Further, this lack of evidentiary support for the trial court's award of damages in the underlying case evinces that the value of the Segers' claims against Diatom were not "fairly determined" by that proceeding.[6] See Gandy, 925 S.W.2d at 713-14 (a settlement or judgment that follows an adversarial trial "fairly determine[s]" the value of the plaintiff's claims).

When the entire underlying proceeding is considered, the underlying judgment was the result of a proceeding much more akin to a post-answer default than a fully adversarial trial. See Dolgencorp of Tex., Inc. v. Lerma, 288 S.W.3d 922, 930 (Tex. 2009) (describing post-answer default proceeding); Stoner v. Thompson, 578 S.W.2d 679, 682 (Tex. 1979) (same). As we stated in Seger I, "[w]hen the judgment is an agreed judgment, default judgment, or when the underlying defendant's participation is so minimal as to evidence that the hearing was not adversarial, the judgment resulting from that hearing may not be admitted as evidence of damages in the Stowers action." Seger I, 279 S.W.3d at 772 n.25 (citing Gandy, 925 S.W.2d at 713, 714). As the underlying judgment is most fairly characterized as a post-answer default judgment and because Diatom's participation in the underlying proceeding was so minimal that the

---

[6] That the underlying judgment does not constitute a fair determination of Diatom's damages is bolstered by the Segers' argument to the trial court that it would be "completely prejudicial" if the jury knew the amount of damages awarded in the underlying judgment.

14

proceeding cannot be fairly characterized as adversarial,[7] we conclude that the underlying judgment was not only not conclusive as to the damages suffered by Diatom, but is inadmissible as evidence of damages in the present action.  See Gandy, 925 S.W.2d at 713-14; Seger I, 279 S.W.3d at 772.

As such, we conclude that the trial court erred in admitting the underlying judgment into evidence and in considering the same as evidence of Diatom's damages resulting from Insurers' negligence.  Because an underlying judgment that was not the result of a fully adversarial trial is no evidence of damages, the fact-finder could not credit this evidence as supporting an assessment of damages in favor of the Segers. See City of Keller, 168 S.W.3d at 827; Gandy, 925 S.W.2d at 713-14; Seger I, 279 S.W.3d at 772.

Other Evidence of Damages

While we have determined that the underlying judgment was not evidence of Diatom's damages, the Segers could still present other evidence that Diatom suffered damage as a result of Insurers' failure to provide a defense and negligence in failing to settle the Segers' suit within policy limits.  However, the Segers relied entirely on the underlying judgment as proof of damages.  As such, the Segers presented no evidence of damages, an element of their claims.

---

[7] Insurers have doggedly attempted to establish that Diatom and the Segers entered into a pre-trial agreement that would allow the Segers to maximize their award of damages in the underlying judgment.  However, any evidence of pre-trial collusion between Diatom and the Segers would only be relevant to the validity of the post-judgment assignment of Diatom's claims against Insurers.  See Gandy, 925 S.W.2d at 714.  The determination of the reliability of the underlying judgment's assessment of damages depends entirely on the extent of Diatom's participation in the underlying proceeding.  See Gandy, 925 S.W.2d at 713-14; Seger I, 279 S.W.3d at 772 n.25.

Conclusion

Having determined that the underlying judgment is not evidence of Diatom's damages and because the Segers offered no other evidence of Diatom's damages, we sustain Insurers' first issue. Because there was no evidence of damages that the fact-finder could consider, we reverse the judgment of the trial court and render judgment that the Segers take nothing by their claims. See TEX. R. APP. P. 43.2(c); AutoZone, Inc. v. Reyes, 272 S.W.3d 588, 595 (Tex. 2008); Gandy, 925 S.W.2d at 720.


Mackey K. Hancock
Justice