

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-23-00378-CV

_____

DALE BALL AND CLIFFORD WIECK, APPELLANTS

V.

BARLEY WATER GROUP, INC. AND ETTER WATER WELL, LLC, APPELLEES

On Appeal from the 31st District Court
Hemphill County, Texas
Trial Court No. 7654, Honorable Steven R. Emmert, Presiding

May 9, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

This appeal concerns the enforceability of a covenant not to compete. It was invoked after two employees of Etter Water Well, LLC (EWW) opted to pursue their own well drilling and service business. Those employees were Dale Ball and Clifford Wieck. Other questions pervaded the dispute between the two individuals, EWW, and the corporation that owned 100% of EWW, that is, Barley Water Group, Inc. (BWG). They included allegations of breached fiduciary duty and the non-payment of profit-sharing sums purportedly due. All became the substance of a lawsuit. And, while the dispute

about the validity of the covenant was resolved by the trial court through summary judgment, the other matters were tried by a jury. The latter denied Ball and Wieck damages for purportedly withheld profit sharing and awarded both EWW and BWG recovery for breached fiduciary duties. Each then appealed. We reverse in part, remand in part, and affirm in part. That said, let us get to the issues.

### EWW and BWG Appeal

We begin with the appeal of EWW and BWG. It involved one issue, that being the enforceability of the non-compete agreement. Allegedly, the trial court erred in holding it unenforceable via Ball and Wieck's motions for traditional and no-evidence summary judgment.[1] We overrule the issue.

As a preliminary matter, we observe that the summary judgment order granting summary judgment did just that. The trial court simply stated that it "GRANTS the Motion on the sole issue of the enforceability of the No-Compete Agreements and their ability to support a breach of contract claim." Then, it denied other aspects of the motions. An order simply stating a motion for summary judgment "is granted" or that the court "grants the motion" lacks decretal language and adjudicates nothing. *Sunday Canyon Prop. Owners Ass'n, Inc. v. Brorman*, No. 07-23-00195-CV, 2024 Tex. App. LEXIS 1464, at *4 (Tex. App.—Amarillo Feb. 28, 2024, no pet.) (mem. op.); *see Naaman v. Grider*, 126 S.W.3d 73, 74 (Tex. 2003) (per curiam) (stating that an order merely granting a motion for judgment is in no sense a judgment itself for it "adjudicates nothing.") Yet, unlike the circumstances in *Sunday Canyon*, the trial court at bar uttered the missing decretal

---

[1] The motions attacked claims in addition to that founded upon breach of the non-compete agreement.

language at a later date and before entry of the final judgment. It did so via the jury charge, wherein it clarified that the covenants "were unenforceable as a matter of law." The enforceability of those covenants was one ground upon which Ball and Wieck sought summary judgment. And, in telling the jury they were unenforceable, the trial court was undoubtedly alluding to what it perceived as its earlier disposition of the summary judgment motions. So, the trial court ultimately granted the "remedy sought" by Ball and Wieck and provided the earlier missing decretal language nullifying the non-compete agreements. *See In re Guardianship of Jones*, 629 S.W.3d 921, 925-26 (Tex. 2021) (describing "decretal" language as language granting or denying the "remedy sought" which in *Jones* was the "dismissal of the bill-of-review").[2]

As for the validity of the trial court's decision, we first describe the covenant. Its entirety consisted of:

Canadian Water Well, Inc.
No-Compete Agreement

I, _____, understand that by signing and accepting this payment (form of a paycheck or shares/ownership) that I am obligated to Canadian Water Well, Inc. and its subsidiaries [referred to as CWW, Inc.]. I no longer have the right or privilege to own or be gainfully employed by another water well drilling or service company within 300 miles of any location of CWW, Inc. for a period of two years from the time of non-employment by CWW, Inc. I understand that I shall never sell, trade, or give out confidential information about company structure, customers, or trade practices gained while employed by CWW, Inc.

---

[2] Contrary to the supposition of EWW and BWG, simply saying a motion for summary judgment "is granted" is not granting the actual remedy sought. Explaining or revealing the effect of granting the motion constitutes "the remedy sought," e.g., the claim is dismissed, the claim is barred by limitations, or the like. And, we again stress the need for the court to include such decretal language in its summary judgment orders.

And, though Ball and Wieck voiced several reasons why they deemed it unenforceable, we need only address one.[3] It pertains to the scope of the restriction found in "I no longer have the right or privilege to own or be gainfully employed by another water well drilling or service company within 300 miles of any location of CWW . . . ."

The accord effectively prohibits Ball and Wieck from working in a particular industry, i.e., "well drilling and service." Such industry wide restrictions are unreasonable. *Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 298 (Tex. App.—Beaumont 2004, no pet.); *John R. Ray & Sons v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied). The same is true of restrictions barring one from pursuing business prospects other than an employer's clients or customers. *Id.*; *accord, Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 388 (Tex. 1991) (finding the covenant unreasonable because, among other things, it inhibited "departing partners from engaging accounting services for clients who were acquired after the partner left, or with whom the accountant had no contact while associated with the firm . . ."). The covenant at bar does that, too. Thus, the trial court had reasonable basis to rule as it did.

Furthermore, and contrary to the suggestion of EWW and BWG otherwise, the trial court had no obligation to ask the jury to adjudicate the restriction's reasonableness and enforceability. That question was and is one of law. *Peat Warwick Main & Co.* 818 S.W.2d at 386; *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 654

---

[3] Of those reasons, one consisted of the allegation that the agreement was only between the actual signatories thereto, Canadian Water Well, Inc., Ball, and Wieck. We need not deal with that due to its unenforceability irrespective of whether EWW was some third-party beneficiary to the accord, as suggested by EWW.

4

(Tex. App.—Houston [1st Dist.] 2009, pet. denied). And, juries do not decide legal questions. That said, we overrule the issue.

### Ball and Wieck Appeal

Turning to the remaining aspects of this appeal, we note that they involve various complaints founded on allegations of deficient evidence. Ball and Wieck tell us no or factually insufficient evidence supports the findings that 1) they breached fiduciary duties owed to EWW or 2) EWW and BWG were entitled to damages for such breaches. Allegedly, they also "conclusively established that EWW breached the profit-sharing agreements"; thus, denying them damages was erroneous. We sustain the issues concerning evidence supporting the award of damages and overrule the others.

### 1) Profit Sharing

Our initial foray into the argument takes us to profit sharing and whether they "conclusively" proved entitlement to same. The applicable standard of review need not be explained. We find it enough to cite all involved to page 526 of *Earth Power A/C & Heat, Inc. v. Page*, 604 S.W.3d 519 (Tex. 2020), and apply that test here.

Ball and Wieck signed a written employment contract entitling each to profit sharing. EWW was not a named party to the agreement. Rather, the signatories were Canadian Water Well, Inc., Ball, and Wieck. Yet, EWW did not appeal the jury's answer of "yes" to the questions whether 1) "Etter Water Well, LLC agree[d] to pay Dale Ball 14% of all profits from Etter Water Well, LLC" and 2) "Etter Water Well, LLC agree[d] to pay Clifford Wieck 8% of all profits from Etter Water Well, LLC". Despite answering affirmatively to those questions, the jury, nevertheless said "no" when asked if EWW failed to comply with its agreement.

5

Ball and Wieck sought to recover their share of the profits supposedly due them for the years 2016 and 2017. No one denies that neither claimant received profit sharing for those years. Yet, the record contains evidence that EWW experienced no profits during that period, only losses. Furthermore, the jury was free to believe that evidence, though Ball and Wieck proffered their own information disputing it. And, believing the evidence of losses rather than profits was not against the great weight and preponderance of the evidentiary record. So, without profits, EWW had nothing to share with Ball or Wieck, which in turn legitimates the jury's finding of no breach.

### 2) *Evidence of Breach and Damages*

Next, we address the findings of breached fiduciary duty and damages and start with the former. The jury found that EWW and BWG both were victims of breached duties by Ball and Wieck. Ball and Wieck, however, contested the liability findings only with regard to EWW. They did not appeal the findings of breached duties owed BWG. So, the latter stand. With that, we turn to our analysis of the recovery by EWW.

### *EWW*

As for breaching duties due EWW, Ball and Wieck argue that neither legally nor factually sufficient evidence support the findings. That is, no evidence illustrated they (for their benefit) solicited either employees or customers of EWW while working for EWW. Proof of one or the other was necessary, in their estimation. Such proof appears of record.

An at-will employee may plan to go into competition with his employer and pursue those plans while employed. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 201-02 (Tex. 2002). Yet, one may not 1) appropriate the employer's trade secrets, 2) solicit

6

its customers while still working for the employer, 3) take certain information such as customer lists, or 4) utilize employer funds, employees, or assets for personal gain. *Id.* The record at bar contains evidence from which a rational jury could reasonably infer that Ball and Wieck 1) communicated with at least one existing customer of EWW before their departure, 2) discussed prepaying Ball and Wieck $500,000 for future well services, and 3) secured a payment in that amount from the customer within days of leaving EWW. That is some evidence of their breaching the duty to forego soliciting their employer's customers (for the benefit of Ball and Wieck) while still employed. And, finding it occurred is not against the great weight of the other record evidence. So, we overrule this aspect of their sufficiency attack.

That leaves the attack upon the finding of lost profits by EWW. It was the sole measure of damages submitted to the jury. EWW attempted to prove them through the testimony of a forensic accountant, Hartman.

In deriving her opinion, the accountant simply determined the identity of EWW customers who subsequently utilized the services of Ball and Wieck once they left. She described her equation as one of "but for"; that is, she determined the profits EWW would have experienced "but for" the departure of Ball and Wieck. Her calculations consisted of 1) identifying EWW customers who gave business to Ball and Wieck after they left and over the ensuing two years and 2) estimating the amount of business those customers would have given EWW without competition by Ball and Wieck. Why those customers decided to acquire well services from Ball or Wieck was not part of her calculus. From that sum, the witness subtracted the estimated expense related to providing the services. The calculation resulted in lost profits of $1.53 million, opined the witness.

7

Having heard that testimony, the jury was then charged to calculate the "damages, if any, that were proximately caused by [the] breach of fiduciary duty." Such was an accurate description of the test; that is, lost profits must proximately arise from or be caused by the wrong in question. *See First State Bank, N.A. v. Morse*, 227 S.W.3d 820, 829 (Tex. App.—Amarillo 2007, no pet.) (stating that the lost profits "must naturally and *proximately* arise from the defendant's wrong") (emphasis in original). And, therein lies the problem.

There is no evidence that the forensic accountant factored into her "but for" analysis the reason the EWW customers transacted business with Ball and Wieck after the latters' departure. There is no evidence that the supposed $1.53 million in lost profits naturally and proximately arose from a particular wrong committed by Ball and Wieck. The accountant merely calculated revenue and profits EWW should have received had the two ex-employees not opened a competing business. But, again, opening a competing business alone violates no fiduciary duties. So, the sums she derived did not reflect an accurate calculation of damages. Nor did anyone cite us to evidence filling the void left by omitting the causative link from her calculation. Our own search of the record also failed to uncover such evidence. So, the record contains no evidence of lost profits suffered by EWW and **caused by the wrongs** of Ball and Wieck.[4] Given this absence of legally sufficient evidence to support the damage finding, EWW must be denied recovery

---

[4] Though it could be said that the customer who agreed to prepay for services reflected **lost income** caused by improper conduct, nothing of record illustrates the lost profit, if any, arising therefrom. Lost income and lost profit are not the same thing. *Univ. Gen. Hosp., LLC v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 551 (Tex. App.—Houston [14th Dist.] 2013, pet. dism'd) (describing lost profit as the loss of net income to a business, that is, income for lost business activity less any expenses that would have been attributable to that activity).

against Ball and Wieck.  *See Jackson Walker, LLP v. Kinsel*, 518 S.W.3d 1, 15 (Tex. App.—Amarillo 2015), aff'd 526 S.W.3d 411 (Tex. 2017) (denying recovery for fraud because no evidence established the damages element of the claim); *Yorkshire Ins. Co. v. Seger*, 407 S.W.3d 435, 443 (Tex. App.—Amarillo 2013), aff'd 503 S.W.3d 388 (Tex. 2016) (reversing judgment and ordering the Segers take nothing due to legally insufficient evidence of damages).  The same is not true of BWG.

### *BWG*

No one disputes that Ball was a director of BWG before departing EWW and remained so afterwards.  Nor can anyone legitimately question that directors owe fiduciary duties to the corporation on whose board they sit.  *Ritchie v. Rupe*, 443 S.W.3d 856, 868-69 (Tex. 2014).  Those duties include dedication of their uncorrupted business judgment for the sole benefit of the corporation.  *Id.*  Dedicating such uncorrupted business judgment means the director cannot usurp corporate opportunities for personal gain.  *Id.* at 875 n.27; *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963).

Next, included in the litany of fiduciary duties mentioned in the trial court's jury charge at bar were those concerning whether Ball 1) acted fairly and equitably regarding BWG, 2) acted in the utmost good faith or exercised the most scrupulous honesty towards BWG, and 3) placed the interests of BWG before his own and gained a benefit for himself at the expense of BWG.  Furthermore, the measure of damages submitted also alluded to "lost profits" which were the consequence of the wrong.  The jury found both breach and damages.  Ball and Wieck do not question, on appeal, 1) the accuracy of the charge, 2) the general finding of breached duty owed BWG, or 3) the test by which damages were

to be assessed as a consequence of the breach. Their complaint lies with the sufficiency of evidence underlying the damage finding and the inclusion within the judgment of an award mirroring that granted EWW.

Regarding the matter of sufficiency, the nature of Ball's contention is a bit unclear. He posits that "1) [b]oth BWG and EWW sought to recover for the same injury: lost profits"; 2) "[b]oth parties presented and relied on the same damage model"; 3) "Hartman, the only damages expert, testified that her analysis of lost profits was the same for both BWG and EWW"; 4) her "estimate of lost profits to BWG was solely based on BWG's supposed entitlement to 70% of EWW's lost profits"; and 5) "[b]ecause the award of $1.53 million to any party is not supported by sufficient evidence, see supra at Section II, it must be reversed as to both EWW and BWG." The passage "see supra at Section II" obviously refers to the contention about Hartman's failure to restrict her calculations to lost profits caused by the breach of duties particularly owed to EWW. Again, she simply calculated lost profits in general, irrespective of whether they were caused by the wrongs of Ball or Wieck.

So, upon our combining the reference to "Section II" with the other quoted excerpts from their brief, we construe the argument as this: because the expert failed to accurately calculate lost profits arising solely from the breached duties owed EWW, the award to BWG of 70% of EWW's lost profits cannot stand either. This may be true if, as Ball suggested, EWW and BWG were prosecuting the same claim "for the same injury." They were not, though.

The wrongs encountered by EWW and BWG differed. The former was injured by Ball and Wieck's soliciting EWW customers or employees ***while employed*** by EWW.

10

Had none of that occurred, then they were free to compete with and divert opportunities from EWW. So, any lost profits suffered by EWW had to emanate from the foregoing bad acts. That is not true of the lost profits suffered by BWG.

The wrong BWG experienced revolved around Ball's diversion of BWG corporate opportunities for his personal benefit while also serving as a director of BWG. The causal link between that wrong and the resulting damages is not dependent upon Ball and Wieck's acting improperly while employed by EWW. It depended upon Ball's acting improperly (i.e., diverting corporate gain of BWG) while a director of BWG. Loss attributable to the latter, therefore, emanated from what BWG would have gained had Ball not diverted those opportunities, and that was 70% of the profits EWW would have generated from the diverted business.

Simply put, BWG made its money from profits generated by EWW. And, though Hartman's calculations may have been deficient viz-a-viz the claim of EWW, they sufficed when determining lost profits related to BWG's claim. To reiterate, the latter focused on the diversion of business while Ball remained a director of BWG, and that was the very substance of Hartman's testimony. She testified that after Ball and Wieck left, business generating $1.53 million in *general lost profits* due EWW actually went to Ball and Wieck. Furthermore, BWG was entitled to 70% of those *general lost profits*, according to her, and 70% of those *general lost profits* ($1.53 million x .7) approximated $1.1 million. Moreover, the jury awarded BWG that very sum.[5] Consequently, the finding of

---

[5] Since we do not understand Ball and Wieck to argue that the $1.1 million to which Hartman testified failed to exclude expenses incurred by BWG to obtain it and, therefore, was not an accurate measure of actual lost profit, we do not address that matter.

11

$1.1 million in damages to BWG had the support of legally and factually sufficient evidence.

As for the trial court's awarding BWG $1.53 million in damages through its judgment, we agree that was a mistake. The evidence was sufficient to support the $1.1 million damage finding. It was neither legally nor factually sufficient to support an award of $1.53 million. Thus, the latter must be reversed.

We reverse that portion of the judgment awarding Etter Water Well, LLC recovery against Dale Ball and Clifford Wieck and order that Etter Water Well, LLC take nothing from Dale Ball and Clifford Wieck. We also reverse the trial court's award of One Million Five Hundred and Thirty Thousand dollars plus pre-judgment interest of Two Hundred Twenty Thousand, Five Hundred Forty-Three dollars and remand the cause to the trial court for entry of judgment commensurate with this opinion. Finally, we affirm the judgment in all other respects.

Brian Quinn
Chief Justice

Doss, J., concurring in the judgment.

12